# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-DP-00890-SCT

*JEFFREY KELLER DAVIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/5/92 |
| TRIAL JUDGE: | HON. WILLIAM B. JONES |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE S. SHADDOCK |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| | CHARLENE R. PIERCE |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | AFFIRMED - 6/27/96 |
| MOTION FOR REHEARING FILED: | 7/18/96 |
| MANDATE ISSUED: | 10/3/96 |

**EN BANC.**

**PITTMAN, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. In September of 1991, Jeffrey Davis was indicted by a Greene County grand jury for the murder of Linda Hillman while engaged in the commission of a robbery. The indictment was returned pursuant to Miss. Code Ann. § 97-3-19(2)(e) (1972) (capital murder statute) and § 97-3-73 (1972) (robbery statute). Davis was arraigned on November 8, 1991, and held without a bond.

¶2. The trial began on May 19, 1992, and continued until May 22, 1992. Davis was found guilty, and the jury entered the sentencing phase of the trial. The jury unanimously found the aggravating circumstances and found that Davis should suffer death.

¶3. The trial court sentenced Davis to suffer death in the manner provided by law and ordered that he be transferred to the custody of the Mississippi Department of Corrections. On June 2, 1992, Davis filed a motion for new trial which the circuit court judge denied on July 28, 1992. On August 7, 1992, Davis perfected his appeal to this Court. Davis assigned the following as error:

**I. THE STATE'S VOLUNTARY INTOXICATION INSTRUCTION IMPROPERLY SHIFTED THE BURDEN OF PROOF ON THE ISSUE OF INTENT.**

**II. THE PROSECUTOR COMMITTED REVERSIBLE ERROR IN REPEATEDLY ELICITING EVIDENCE CONCERNING DAVIS' LACK OF REMORSE AS WELL AS IN USING THIS SO CALLED LACK OF REMORSE TO COMMENT ON DAVIS' FAILURE TO TESTIFY.**

**III. THE MANY INSTANCES OF PROSECUTORIAL MISCONDUCT VIOLATED JEFFREY DAVIS' RIGHT TO A FAIR TRIAL.**

**IV. THE NONCONFORMITY BETWEEN THE CAPITAL MURDER INSTRUCTION AND THAT DEFINING ARMED ROBBERY WAS ERROR.**

**V. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF MURDER.**

**VI. THE USE OF DAVIS' STATEMENTS WAS ERROR IN THAT THE STATE FAILED TO PROVE THEY WERE VOLUNTARY.**

**VII. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN DAVIS' MOTION TO QUASH THE JURY VENIRE.**

**VIII. THE TRIAL COURT ERRED IN LIMITING EXAMINATION OF WITNESS CLAYTON EVANS WITH REGARD TO HIS KNOWLEDGE OF THE VICTIM.**

**IX. THE TRIAL COURT ERRED IN PROHIBITING EVIDENCE CONCERNING THE VICTIM'S PRIOR CONVICTION FOR POSSESSION OF MARIJUANA.**

**X. THE JURY WAS GIVEN AN UNCONSTITUTIONAL DEFINITION OF HEINOUS, ATROCIOUS OR CRUEL, AN AGGRAVATING CIRCUMSTANCE THAT WAS UNSUPPORTED BY THE EVIDENCE IN THIS CASE.**

**XI. THE AGGRAVATING CIRCUMSTANCE OF MURDER COMMITTED FOR PECUNIARY GAIN IS INVALID IN THAT IT FAILS TO NARROW THE CLASS OF PERSONS ELIGIBLE FOR THE DEATH PENALTY.**

**XII. SENTENCING INSTRUCTION S-3 WAS ERRONEOUS IN THAT IT CONTAINED A SIGNATURE LINE ONLY UNDER THE OPTION OF DEATH.**

**XIII. THE SENTENCING INSTRUCTIONS WERE ERRONEOUS IN THAT THEY FAILED TO INFORM THE JURY THAT THEY NEED NOT BE UNANIMOUS IN FINDING MITIGATING CIRCUMSTANCES.**

**XIV. THE TRIAL COURT ERRED IN FAILING TO HAVE THE COURT REPORTER TAKE DOWN THE ACTUAL JURY SELECTION PROCESS.**

**XV. THE TRIAL COURT ERRED IN ALLOWING THE DISTRICT ATTORNEY TO ASK PROSPECTIVE JURORS ABOUT THEIR ABILITY TO RETURN A DEATH**

**SENTENCE GIVEN SPECIFIC FACTS.**

**XVI. THE TRIAL COURT ERRED IN ADMITTING A PHOTOGRAPH OF DAVIS' RIGHT ARM.**

**XVII. THE DEATH SENTENCE SHOULD BE VACATED AS IT IS DISPROPORTIONATE GIVEN THE CIRCUMSTANCES OF THE CRIME AND THE BACKGROUND OF THE DEFENDANT.**

**XVIII. THE CUMULATION OF ERROR IN THIS CASE DEMANDS REVERSAL.**

¶4. After due consideration of all the assignments of error, the Court affirms Davis' conviction and sentence of death by lethal injection.

## STATEMENT OF FACTS

¶5. On Friday, July 12, 1991, Sheriff Tommy Miller received a phone call at home from Jeffrey Davis. Davis identified himself to Sheriff Miller and told the Sheriff that he had killed Linda Hillman. Sheriff Miller had no prior notice of foul play at Linda Hillman's trailer located in Greene County, Mississippi. Sheriff Miller knew both Davis, the defendant, and Hillman, the victim. Davis told Miller to come and get him at his home. Miller went to Davis' home with Deputy Sheriff Henry Benjamin. When they arrived, Davis came out of his home carrying two bags of clothes. Davis began to tell his story to Sheriff Miller, but Sheriff Miller stopped him and read Davis his *Miranda* rights. Davis told Miller that he understood his rights and finished telling Miller his story.

¶6. Davis told Sheriff Miller the following: (1) that Davis went to Hillman's trailer early Thursday morning, July 11, 1991; (2) that he killed Hillman about 6:00 a.m.; (3) that he had borrowed two hundred dollars from Hillman the previous Monday; (4) that he knew she had more money; (5) that he went there to rob Hillman in order to buy more drugs; (6) that he killed her when she refused to give him more money; (7) that after the killing he walked through a corn field, and (8) that he went to Pascagoula, Mississippi to buy more drugs. Davis admitted stabbing Hillman with a knife. Davis had the knife he had used to kill Hillman on him and gave the knife to Sheriff Miller. Davis also told Miller the location of clothing and shoes that Davis had worn the morning of the murder. Miller, accompanied by Davis, found the items submerged in separate creeks. After retrieving these items, Miller and Benjamin took Davis to the sheriff's office and advised him again of his rights under the Constitution and required by *Miranda*. Davis signed a waiver of rights form and retold the story to Sheriff Miller. Sheriff Miller then went to Hillman's trailer where he found her lying dead on her bed. Miller testified that the scene was secured and that nothing was moved to allow investigators to gather evidence. Davis later confessed that he shot Hillman first and then stabbed her when she began screaming.

¶7. Investigator Fortenberry and Investigator Sumrall of the Mississippi Highway Patrol were called to handle the investigation. Evidence gathered at Hillman's trailer included unfired .22 caliber cartridges, fingerprints, hair samples collected from the victim's bed, syringes, a pipe, "roaches," a Marlboro box with white pills, and a straw with white powder. No money was found in Hillman's purse. Photographs of the crime scene were taken and later admitted into evidence at trial.

¶8. Davis consented to a search of his house. Davis accompanied Sheriff Miller to his house and they were met there by the investigators. Evidence recovered from the defendant's house included: (1) a .22-caliber gun, (2) marijuana, and (3) a bloody shirt. Davis also consented to the search of his truck which revealed: (1) blood on the seat, (2) a "shooter's kit" for drug use with syringes and arm tie, and (3) a car jack with blood.

¶9. On Saturday, July 13, 1991, blood and urine samples were taken from Davis. Tests showed that Davis had used cocaine within one to three days of when the sample was taken.

¶10. An autopsy was performed on Hillman's body. No drugs were found. However, it was at this point that the police realized that Hillman had been shot and stabbed. The autopsy indicated the gunman was above and behind the victim. Testimony later established that Hillman could have moved about for fifteen to twenty minutes with the shooting injuries.

¶11. On cross-examination, Davis questioned Sam Howell, a drug expert, about cocaine psychoses. Howell testified that a cocaine psychosis occurs when a person ingests cocaine and, as a result, exhibits psychotic behavior. Mr. Howell stated that there was no way to determine if Davis was operating under delusional activity associated with a cocaine psychosis even with the knowledge of the cocaine levels indicated by the test results of Davis' blood.

¶12. Testimony proved that two hairs found in the trailer matched Davis' hair and that the pin markings on the unfired .22 cartridges matched Davis' gun. Foot casts taken from the field behind the victim's trailer were unsuitable for analysis.

¶13. Christine Davis, Davis' mother, testified regarding the background of Davis. Davis had a high school diploma and served in the military. Davis was also a friend of the victim. No expert testimony was presented.

## DISCUSSION OF LAW[1] PRE-TRIAL PHASE

### VII. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN DAVIS' MOTION TO QUASH THE JURY VENIRE.

¶14. Upon completion of voir dire by the State, Davis moved the court to consider a motion to quash the jury venire. Davis asserted that the venire should be quashed because the venire was impaneled for the week prior to that of his trial and was simply recalled to serve again. Davis stated that he was unaware of this fact until the State mentioned it, and added that he believed the State had requested a special venire.

¶15. The court expressed a preference for a new panel but denied the motion under the circumstances of this case. The trial court treated the jury as new because they had retaken the oath "as if they were a new jury." Later, Davis renewed his motion to quash the jury panel and proffered that the jury had in fact been present the previous week and that they had not been discharged, but rather, required to return the week of the Davis trial. Richard Byrd, the circuit clerk, explained that the procedure was a normal, local custom for this court and that none of the jurors who returned had actually served on any case the previous week. Byrd admitted that there had been a criminal and a civil case ready for the previous week; however, the defendant in the criminal case had pled guilty, and Byrd assumed

that the civil suit had been settled. Byrd said that Davis had not moved for a special venire, therefore, none was called. Finally, Byrd testified that the State had requested a special venire but had withdrawn the request prior to trial. A copy of that motion is not found in the record, but Davis argues reliance anyway. The judge overruled this motion.

¶16. On appeal, Davis argues that under Miss. Code Ann. §13-5-77 (1972), he was entitled to a special venire. Davis admits that he failed to request a special venire. However, Davis urges that he was entitled to rely upon the State's request for a special venire. We do not agree.

¶17. Miss. Code Ann. § 13-5-77 reads "[A]ny person charged with a capital crime . . . or the district attorney in any such case shall, **upon demand**, be entitled to a special venire." (emphasis added). Although entitled to a special venire under the statute, the request for a special venire must actually be made. It appears from the record that both Judge Jones and Davis were surprised to learn that the venire had returned from the week before. At all times, the jury list was available to Davis, and with any diligence, he could have known that he would confront a general venire. Davis knew that he had not been present for a special venire selection. Finally, there is no attempt on the part of Davis to suggest that he was prejudiced as a result of the circumstances.

¶18. True enough, Davis was entitled to make a request and to receive a special venire; however, Davis was required to make this request in a timely manner. Several cases have held that Davis made an untimely request for special venire. *See Williams v. State*, 590 So. 2d 1374 (Miss. 1991)(request for special venire on eve of trial was untimely); *Tolbert v. State*, 402 So. 2d 871, 873 (Miss. 1981) (eve of trial was too late to request special venire); *Sharplin v. State*, 357 So. 2d 940 (Miss. 1978) (holding that request brought to attention of the judge on day of trial was untimely). Because Davis did not make any request for special venire prior to trial, we find that the trial court was not in error for denying his motion to quash the regular venire.

¶19. This Court will not overrule the lower court's denial of a motion for special venire except upon a showing of abuse of discretion. *Tolbert*, 402 So. 2d at 873. Because there was no showing of abuse of discretion, we find that the assignment of error is without merit.

### XIV. THE TRIAL COURT ERRED IN FAILING TO HAVE THE COURT REPORTER TAKE DOWN THE ACTUAL JURY SELECTION PROCESS.

¶20. Davis contends that the trial court was in error for failing to ensure that the court reporter recorded the actual jury selection process. The record on appeal reflects that the jury selection process was handled by counsel without involvement of the trial court.[2] After excusing the final jury panel, the court entertained challenges for cause to the jury empaneled. At no point did Davis object to the manner in which the trial court handled jury selection.

¶21. We have admonished trial courts to ensure that every word is transcribed stating, "[W]e direct without equivocation that court reporters should **never** fail to preserve for record at-the-bench or chambers conferences following objections. . . . The trial judge is responsible to enforce this directive." *Suan v. State*, 511 So. 2d 144, 147 (Miss. 1987). The law obligates the court reporter to take notes of all proceedings at trial so that they will be available in the event of an appeal. *Doby v. State*, 557 So. 2d 533, 536 n. 2 (Miss. 1990). However, "it is the appellant's burden to furnish the record." *Goodson v. State*, 566 So. 2d 1142, 1153 (Miss. 1990)(designating the record on appeal

turns on wishes of counsel); **Gibson v. State**, 580 So. 2d 739, 742 (Miss. 1991) ("We do not understand why the reporter would include in the record matters not designated.").

¶22. In the case at hand, Davis failed to object to the manner in which the jury was selected. Further, Davis failed to designate this portion of the record for purposes of appeal, and failed to show or attempt to show that he was prejudiced as a result, in that the loss of information would have revealed a violation of Davis's rights during jury selection. Further, at trial Davis did not ask the court to have the reporter record the matters of which he now complains, nor did he call to the Court's attention the reporter's failure to record jury selection. Finally, if any error did occur, it was harmless. Thus, we are of the opinion that this issue is procedurally barred and without merit.

### XV. DID THE TRIAL COURT ERR IN ALLOWING THE DISTRICT ATTORNEY TO ASK PROSPECTIVE JURORS ABOUT THEIR ABILITY TO RETURN A DEATH SENTENCE GIVEN SPECIFIC FACTS.

¶23. During voir dire of the venire, the State delved into the personal opinions of the venire. The district attorney advised the members of the venire that the decision to impose the death penalty was theirs. The State questioned whether potential jurors held any "conscientious scruples" that would conflict with the death penalty. The State also questioned whether the venire could return a death penalty given certain facts, specifically, that the victim was killed by a friend, that Davis had no prior felony convictions, and that Davis was charged with one murder. The record reflects that the State often told the venire that the death penalty decision was in their hands. Likewise, there were also several occasions when the defense mentioned that the jury could decide to find Davis not guilty.

¶24. On appeal, Davis acknowledges that the State was entitled to a jury composed of members who have the ability to vote for the death penalty. Davis contends that the prosecution was not entitled to ask jurors whether they could consider the death penalty given certain specific circumstances, but rather, only whether they could consider the death penalty in the abstract. Davis apparently alludes to, but does not cite Miss. Unif. Crim. R. Cir. Ct. Prac. 5.02.[3] Davis also alleges that the prosecutor had potential jurors acknowledge that they could ignore such compelling mitigation as the fact that Davis had no prior record and, in essence, that this amounted to an elicited promise of a guilty verdict.

¶25. We do not agree that the prosecutor sought promises from the jury regarding a guilty verdict, nor did the prosecution ask the jury to ignore mitigating evidence in the present case. We note that the trial court has broad discretion in passing on the extent and propriety of questions that are addressed to the venire. **Jones v. State**, 381 So. 2d 983 (Miss.), **cert. denied**, 449 U.S. 1003 (1980). Abuse of discretion will only be found where Davis shows clear prejudice resulting from undue lack of constraint on the prosecution or undue constraint on the defense. **Id. See also, Williams v. State**, 544 So. 2d 782, 784 (Miss. 1987) ("[T]his Court will take note of abuse on appeal where prejudice to the accused is present."); **Leverett v. State**, 112 Miss. 394, 73 So. 273, 274 (1916)(reversing where whole trend of voir dire intended to impress jury with idea that their duty was to convict).

¶26. We recognize that the district attorney has the responsibility and the duty on behalf of the State and the public's interest to make inquiry into the attitudes of prospective jurors toward imposition of the death penalty, in order that both the State and Davis receive a fair trial. **Myers v. State**, 268 So. 2d 353, 355 (Miss. 1972)(citing **Murphy v. State**, 246 So. 2d 920 (Miss. 1971)(holding that error, if

any, in specific questioning the prosecution may be later barred later by proper jury instructions). The district attorney's duty is restricted in that "the prosecuting attorney must confine his statement to the facts he expects to prove." *Woodward v. State*, 533 So. 2d 418, 425 (Miss. 1988), *cert. denied*, 490 U.S. 1028 (1989). The district attorney should also avoid "seeking a promise of commitment from the jury to convict if the State proves certain facts." *West v. State*, 485 So. 2d 681, 686 (Miss. 1985), *cert. denied*, 479 U.S. 983 (1986). The "district attorney has the right in a capital case to reasonably satisfy himself that no juror [entertains] conscientious scruples against the death penalty . . . and he may to a reasonable length search further into that inquiry." *Phenizee v. State*, 178 So. 579, 582 (Miss. 1938). Voir dire of jurors in a death penalty case is difficult and not always subject to prior preparation, in that it depends on answers from jurors and attitudes expressed through those answers. Therefore, we find that the trial court did not abuse its discretion in the case *sub judice* because the prosecution's voir dire was within the permissible range of acceptable questioning. This error is without merit.

## GUILT PHASE

### I. DID THE STATE'S VOLUNTARY INTOXICATION INSTRUCTION IMPROPERLY SHIFT THE BURDEN OF PROOF ON THE ISSUE OF INTENT?

¶27. Davis complains that Jury Instruction S-4 relieved the State of the burden of proving intent, violating his due process rights. Jury Instruction S-4 reads:

> The Court instructs the jury that if a Defendant, when sober, is capable of distinguishing between right and wrong, and Davis voluntarily deprives himself of the ability to distinguish between right and wrong by reason of becoming intoxicated by use of alcohol or drugs and commits an offense while in that condition, he is criminally responsible for such acts. Therefore, if you find from the evidence in this case beyond a reasonable doubt that Davis, Jeffrey K. Davis, was capable of distinguishing between right and wrong at the time of the alleged offense or that he voluntarily deprived himself of the ability to distinguish between right and wrong by becoming intoxicated by the use of alcohol or drugs, and while in that condition committed the offense of Capital Murder, then he is criminally responsible for that act, and in such event you should find Davis guilty as charged.

¶28. The landmark case of *McDaniel v. State*, 356 So. 2d 1151 (Miss. 1978), sets forth the principle that:

> If a defendant, when sober, is capable of distinguishing between right and wrong, and Davis voluntarily deprives himself of the ability to distinguish between right and wrong by reason of becoming intoxicated and commits an offense while in that condition, he is criminally responsible for such acts.

*Id.* at 1161. *See also Smith v. State*, 445 So. 2d 227, 230-31 (Miss. 1984) (reiterating rule that defendant is responsible for actions if voluntarily intoxicated). However, "voluntary intoxication is not a substitute for intent." *Lee v. State*, 403 So. 2d 132, 134 (Miss. 1981).

Trial courts must remember that the purpose of the *McDaniel* rule is to remove voluntary

intoxication as a defense, not to provide an affirmative instruction for the state which might mislead a jury to thinking that it is not necessary [for the state] to prove intent, when intent is a requisite ingredient of the offense.

*Id.* There must be some evidentiary basis for the "*McDaniel* rule" instruction. *Norris v. State*, 490 So. 2d 839, 841 (Miss. 1986). Norris objected to such an instruction on the grounds that the defense theory was insanity, not intoxication. *Id.* The Court rejected Norris' contention and found that this type instruction was proper because both sides had offered evidence which put the intoxication issue before the jury. *Id.* at 842. Because Davis placed his intoxication at issue, the requisite basis existed in order for the trial court to properly grant Instruction S-4. Thus, we again conclude that the issue is without merit.

¶29. Furthermore, it cannot be said that this issue holds merit when Instruction S-4 is reviewed along with Jury Instructions S-2 and S-3. As to intent, S-2 reads:

If you believe from all the evidence in this case, beyond a reasonable doubt, that Davis, Jeffrey K. Davis, on or about July 11, 1991, in Greene County, Mississippi, did **wilfully, unlawfully, feloniously and of his malice aforethought, deliberate design**, then and there, kill and murder Hillman, a human being, without authority of law, when engaged in the commission of the crime of Robbery, then, if you so believe from all the evidence in this case beyond a reasonable doubt, Davis is guilty of Capital Murder, and it is your sworn duty to say so by your verdict. (emphasis added).

¶30. Jury Instruction S-3 reads, in part:

If you believe from all the evidence in this case beyond a reasonable doubt that Davis, Jeffrey K. Davis, in Greene County, Mississippi, on or about July 11, 1991, **wilfully, unlawfully, and feloniously, with the felonious intent to permanently deprive the owner thereof,** did take steal and carry away or attempt to take, steal and carry away the personal property of Hillman, from the presence and against the will of the said Hillman, by violence to her person with a deadly weapon, then the same would constitute armed robbery. (emphasis added).

Voluntary intoxication is not a defense in this state. Jury Instruction S-4 was properly submitted to the jury because the jury was presented with the issue of intoxication of Davis at the time of the murder. The jury was not misled by the "*McDaniel* rule" instruction. Even if they were, the other instructions submitted clarified the burden of proof of the State to prove intent beyond a reasonable doubt. *See Roberts v. State*, 458 So. 2d 719, 721 (Miss. 1984) (finding that all instructions should be read together). Consequently, this issue is without merit.

> **II. DID THE PROSECUTOR COMMIT REVERSIBLE ERROR IN REPEATEDLY ELICITING EVIDENCE CONCERNING DAVIS' LACK OF REMORSE AS WELL AS IN USING THIS SO CALLED LACK OF REMORSE TO COMMENT ON DAVIS' FAILURE TO TESTIFY?**

¶31. The following colloquy occurred between the State and Kevin Fortenberry, a crime scene investigator with the Mississippi Highway Patrol:

BY MR. HARKEY: What was his appearance?

BY MR. FORTENBERRY: He was calm, but he --

BY MR. SHADDOCK: -- Judge, we are going to object to this. That's how many hours after this?

BY THE COURT: Objection is overruled.

BY MR. HARKEY: What was his appearance?

BY MR. FORTENBERRY: He was calm and he wasn't upset too much. But, to me, he had kind of a cocky attitude -- I killed her so I'm ready to get it over with.

BY MR. SHADDOCK: We object to that. He didn't know this man before. He can't form an opinion on that based on what he saw.

BY THE COURT: Objection is overruled. Go ahead.

BY MR. HARKEY: Did you see any signs of remorse?

BY MR. FORTENBERRY: No, sir, I didn't.

Again, the State asked Don Sumrall, a crime scene investigator assigned to the Mississippi Crime Lab, his opinion as to the appearance and condition of Davis. After the court overruled the objection, Sumrall responded:

> I didn't question the suspect, but I was there while he was having conversations with the Sheriff and Officer Fortenberry. And the main thing that I noted about Davis is that he seemed not to have any remorse about what had taken place.

¶32. During closing arguments of the sentencing phase, the State commented, "I have seen nothing in mitigation. I haven't seen remorse." Davis objected on the grounds that the comment regarded Davis's failure to testify. Davis asked that the jury be instructed to disregard it, and also moved for a mistrial. The trial court stated, "The objection will be sustained. I will admonish the jury to disregard anything that is not in evidence. . . . Motion for mistrial will be denied."

¶33. We have stated:

> The demeanor, acts and conduct of an accused at the time and subsequent to the crime are admissible. However, this should be limited to a statement of the facts by the witness or witnesses, leaving the jury free to form its own conclusions. The admission of the opinion of the officers who investigated the killing that the appellant showed no signs of grief, over the objection of the appellant, was improper and highly prejudicial.

*Harrelson v. State*, 217 Miss. 887, 891, 65 So. 2d 237, 239 (1953)(allowing officers to testify that a defendant showed no signs of grief). We reversed the conviction of Harrelson because he did not receive a fair and impartial trial. *Id.* "The [*Harrelson*] opinion simply recognized the unfairness of subjecting a defendant to an objective "grieving test." *Flanagin v. State*, 473 So. 2d 482, 487 (Miss.

1985). "This is still a good rule of law." ***Kolb v. State***, 542 So. 2d 265, 269 (Miss. 1989) (citations omitted).

¶34. In ***Johnson v. State***, the Court explained that "[t]he circuit court judge is in the best position to weigh the consequences of the objectionable argument, and unless serious and irreparable damage has been done, admonish the jury then and there to disregard the improper comment. ***Johnson v. State***, 477 So. 2d 196, 209-10 (Miss. 1985), ***cert. denied,*** 476 U.S. 1109 (1986). We believe that the admonition of the court sufficiently cured the effect of the statement. The assignment of error is without merit.

### III. WERE THERE MANY INSTANCES OF PROSECUTORIAL MISCONDUCT WHICH VIOLATED DAVIS' RIGHT TO A FAIR TRIAL?

¶35. Davis sets forth four comments made by the prosecution as error.

### A. <u>The prosecution compared the victim's rights to Davis's rights.</u>

¶36. During closing arguments at sentencing, the prosecution analogized the victim and Davis proclaiming that Davis "was the judge and the defense lawyer. . . . He was the jury. And he decided in his own mind to kill and murder. . . . Mr. Davis had due process." In ***Shell v. State***, the prosecutor commented that Shell "was clothed in the full protection of the Constitution of the United States and he got what Audie Johnson never got. And that is a jury of twelve good people to decide his fate." ***Shell v. State***, 554 So. 2d 887, 900 (Miss. 1989), ***rev'd on other grounds Shell v. Mississippi***, 498 U.S. 1 (1990). Like Davis, Shell similarly claimed that the statement represented above was a comment on his exercise of specific constitutional rights. ***Id.*** The ***Shell*** court concluded that since the comment was an isolated statement and "no other portion of the closing argument focused on the exercise of constitutional rights" by the defendant, then the comment did not warrant a reversal of the jury's verdict. ***Id. See also, Conner v. State***, 632 So. 2d 1239, 1264 (Miss. 1993), ***cert. denied, Conner v. Mississippi***, 115 S. Ct. 314 (1994).

¶37. Finding no other portion of the closing arguments to this effect, we find that the comments by the State were isolated and do not warrant a reversal.

### B. <u>The prosecution argued that drug use rebuts mitigating evidence of no significant history of criminal activity.</u>

¶38. Davis admitted that he was high on cocaine at the time of the murder and argues that the jury should have considered this as a mitigating factor. Davis then contended that the prosecutor was in error for commenting that his voluntary drug use, while not a felony conviction, rebutted the mitigating circumstance of no significant history of criminal activity.

¶39. In his brief, Davis asserted that the prosecution improperly turned mitigating evidence into an aggravating circumstance. See Miss. Code Ann. § 99-19-101(6)(f). In this instance, we conclude that it was proper for the prosecution to rebut a defense counsel argument that certain evidence should be regarded as a mitigating circumstance. In ***Faraga v. State***, Davis emphasized the fact that his absence of criminal activity should be regarded as a mitigating circumstance. ***Faraga v. State***, 514 So.2d 295, 304 (Miss. 1987), ***cert. denied, Faraga v. Mississippi***, 487 U.S. 1263 (1988). The Court stated,

"Therefore it was perfectly proper for the District Attorney [to] rebut this argument by pointing to his arrest in Texas and imprisonment in Cuba." *Id*.[(4)]

¶40. Similarly in the case at hand, Davis placed his prior criminal activity at issue when Officer Fortenberry took the stand for the purpose of showing that Davis had no criminal convictions. The prosecutor was within his rights to rebut the mitigating circumstance of no prior convictions by arguing that Davis was a drug user. Therefore, we find this issue to be without merit.

### C. <u>The prosecution impugned the ethics of defense counsel in open court.</u>

¶41. Davis complained that the State impugned the ethics of defense counsel when the State sought to introduce all the evidence not previously entered on direct examination. During cross-examination, the defense inquired into several pieces of evidence obtained at the crime scene but not offered into evidence. The defense then queried, "All right. I just wonder why we haven't seen it." In response the State objected and stated, "Judge, I object to that comment. It didn't sound like a question, but it did sound like a dig to the State."

¶42. On redirect, the State sought to introduce the box of evidence and commented, "I'm not going to stand in this courtroom and let him make a point out of us attempting to hide evidence. That's a cheap shot."

¶43. Davis argues that the prosecutor made unnecessary personal comments which were improper and erroneous, citing *Clemons v. State*, 320 So. 2d 368, 370 (Miss. 1975), wherein the prosecutor yelled at the defense "when you stick them they holler." These comments are obviously not comparable. We do not believe the comments of the prosecutor impugned the ethics of the defense counsel and the remark is certainly not cause to reverse the jury decision. Therefore, this issue is without merit.

### D. <u>The prosecution argued speculative victim impact evidence.</u>

¶44. During closing argument at sentencing, the State attempted to recreate Hillman's last moment:

> I wonder what the victim was thinking. Then she makes it out. There's blood, two spots in the corner sitting down on the floor, on the right side. She is on the corner sitting down on the floor, her right side, right where this blood is on the floor. I wonder what she thought while she was there. Did she beg for mercy? Did she beg for mercy, as we have heard Mr. Shaddock. Did she beg this man for mercy at that point? Please, Jeffrey, don't.
>
> BY MR. SHADDOCK: Judge, those matters are not in evidence. We object.
>
> BY THE COURT: It's argument. Objection is overruled.

¶45. Regarding the latitude of a prosecutor, this Court has stated:

> [The prosecutor] may comment upon any facts introduced into evidence. He may draw whatever deductions seem to him proper from these facts, so long as he does not use violent and abusive language, and even in many cases invectives may be justified and even called for, as pointed out by Chief Justice Whitfield in *Gray v. State*, 90 Miss. 235, 43 So. 289 [1907].

*Shell v. State*, 554 So. 2d 887, 900 (Miss. 1989)(**quoting** *Nelm & Blum Co. v. Fink*, 159 Miss. 372, 131 So. 817 (1930)).

¶46. In *Conner v. State*, 632 So. 2d 1239, 1276 (Miss. 1993), Conner complained that the prosecution had impermissibly sought sympathy for the victim. This Court rejected that argument and quoted from *Hansen v. State*, 592 So. 2d 114, 146 (Miss. 1991), *cert. Denied, Hansen v. Mississippi*, 504 U.S. 921 (1992):

> A state may legitimately conclude that evidence about the victim and about the impact of the murder of the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed.

*Conner*, 632 So. 2d at 1276-77 (**quoting** *Hansen*, 592 So. 2d at 146). We again conclude that the statements of the prosecutor were properly drawn inferences from the evidence of how and when Hillman was shot and stabbed. The assignment of error is without merit.

¶47. As to the entirety of Issue III, there being no contention with merit, this Court affirms the lower court.

### V. DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF MURDER?

¶48. Davis complained that it was a violation of his due process rights for the trial court to deny a lesser-included offense instruction of murder. Jury Instruction D-7, which was denied, reads:

> The Court instructs the Jury that under the law of the State of Mississippi that the crime of murder is defined as "the killing of a human being without authority of law by any means or in any manner when done with deliberate design to effect the death of the person killed."

> The Court further instructs the Jury that if you believe from the evidence in this case that Davis, did, without authority of law, on July 11, 1991, in Greene County, Mississippi, kill Hillman, a human being, with deliberate design on his part to effect her death, then you may find Davis guilty of the crime of murder, and the form of your verdict may be:

> "We, the Jury, find Davis, Davis, guilty of the crime of murder."

At trial, the State argued that the record did not support the instruction for murder because the jury had heard no other version of events other than a murder during a robbery. Davis rebutted that the purse of the victim was found empty in the trailer by investigators. Davis then proceeded to make an intoxication argument in an effort to override the fact that Davis had confessed to the robbery and murder.

¶49. On appeal, Davis argues that "[t]he only evidence of robbery in the record is the purported confession given by Davis to Sheriff Miller." Therefore, Davis concludes, the lesser included offense instruction was erroneously denied.

¶50. Where the jury could, based on the evidence presented, find Davis not guilty of the crime charged, but guilty of the lesser included offense, a lesser included offense instruction is warranted.

*Toliver v. State*, 600 So.2d 186, 192 (Miss. 1992); *Fairchild v. State*, 459 So. 2d 793, 800 (Miss. 1984). Where Davis has requested the jury be instructed on a lesser charge, this Court will look at the evidence in the light most favorable to Davis in determining whether such was warranted. *Taylor v. State*, 577 So. 2d 381, 383 (Miss. 1991). "If a 'rational' or a reasonable jury could find Davis **not guilty** of the principal offense charged in the indictment yet **guilty** of the lesser-included offense," then the lesser included offense instruction should be granted. *Monroe v. State*, 515 So. 2d 860, 863 (Miss. 1987) (emphasis added).

¶51. A lesser included offense instruction is warranted only where there is an evidentiary basis for it. *Mease v. State*, 539 So. 2d 1324, 1330 (Miss. 1989). The central determination for this issue is whether such evidence existed in the case at hand. For this determination, it is necessary to review the elements of capital murder and murder. The elements of capital murder as charged in the indictment are: (1) the killing of a human being (2) without authority of law (3) with or without deliberate design to effect death, (4) by a person engaged in the commission of robbery. Miss. Code Ann. § 97-3-19(2)(e) (1972). The elements of murder are: (1) the killing of a human being (2) without the authority of law (3) done without deliberate design to effect the death by any person engaged in the commission of any felony other than robbery. Miss. Code Ann. § 97-3-19(1)(c) (1972).

¶52. The evidence at trial clearly satisfies the elements of (1) killing of a human being (2) without the authority of law (3) with or without deliberate design. This leaves the Court to decide whether the evidence supports a theory that the robbery did not occur. There were no witnesses to this murder. The main evidence is the confession of Davis as testified to by Sheriff Miller. Davis did not take the stand. Through his confession, Davis admitted that he had gone to Hillman's trailer for the purpose of getting money to buy drugs, and when Hillman refused to give him the money, he killed her. Davis further confessed that he took the money and went to Jackson County to buy drugs. This testimony is supported by the fact that investigators found no money in Hillman's purse. In this instance, there is no denial in any form or fashion of the robbery, and there is no suggestion by Davis that it was anything other than capital murder. In this record, the evidence only supports capital murder.

¶53. Therefore, the trial court did not err in declining to grant Jury Instruction D-7. A reasonable jury could not have found Davis **not guilty** on the charge of **capital murder**. *See Monroe*, 515 So. 2d 860 (Miss. 1987) As such, the standard for granting a lesser included instruction has not been met. Additionally, the jury had the opportunity to sentence Davis to life imprisonment through the sentencing instruction. There is no evidentiary basis to support that the robbery did not occur. We conclude that the issue is without merit.

### VI. WAS THE USE OF DAVIS' STATEMENTS ERROR IN THAT THE STATE FAILED TO PROVE THEY WERE VOLUNTARY?

¶54. Sheriff Miller testified that Davis called him at home and told the Sheriff that he had killed Linda Hamilton. Upon arrival at Davis' house, Miller and Deputy Sheriff Henry Benjamin observed Davis leaving his house with two bags of his clothes. According to Miller, Miller checked Davis' bags, and Davis began to tell his story. Miller testified that he stopped Davis in order to read Davis his rights, which Davis said he understood. Miller said that Davis responded to questions asked by Miller and agreed that Davis appeared to have his mental faculties about him. As per Miller's testimony, Davis

made a lengthy statement including: (1) that Davis wanted to turn himself into the Sheriff, (2) that Davis told the Sheriff where his clothes were, (3) that Davis had gone to the trailer looking for Hillman to give him more money to buy drugs, (4) that he had killed Hillman, (5) that he had stabbed her with a knife which he gave to Sheriff Miller, (6) that he had gone to her house early Thursday morning, parking his car in a corn field, (7) that Davis killed Hillman after she refused to give him the money, (8) that after killing Hillman, Davis went to Pascagoula and bought cocaine, and (9) that Davis had thrown his clothes into several creeks.

¶55. Miller and Davis left Davis' house and went to the three creeks where Davis had disposed of his clothing from the night of the murder. Then, Miller and Davis went to the courthouse. Miller read Davis his *Miranda* rights again, and Davis signed a form waiving his rights. Then, Davis repeated the same story as before.

¶56. Before trial, Davis did not request a suppression hearing regarding the statement. Davis also failed to make **any** objection to the voluntariness of the statement during Miller's direct testimony. On cross examination, Sheriff Miller said Davis was acting normal, that he had not tested Davis for alcohol and that he did not smell alcohol on Davis. On appeal, Davis contends that the trial court should have made a preliminary determination that the statements were voluntary since the record indicated Davis was high on cocaine at the time the statements were made.

¶57. We find that this issue is procedurally barred. "Counsel may not sit idly by making no protest as objectionable evidence is admitted, and then raise the issue for the first time on appeal." *Cole v. State*, 525 So. 2d 365, 369 (Miss. 1987), *cert. denied, Cole v. Mississippi*, 488 U.S. 934 (1988). Davis appears to feel aggrieved that he did not receive a hearing where he did not request one, neither at, before, nor during trial. "If defendant fails to offer evidence in support of any reason he has for objecting to the admission of a confession, he cannot thereafter complain of its inadmissibility on some evidentiary basis which he failed to present at trial when he had an opportunity to do so." *Leatherwood v. State*, 548 So. 2d 389, 396-97 (Miss. 1989).

¶58. There is no ruling of the trial court for us to review. The trial court had no opportunity to test the admissibility of Davis' statement. The procedural dictates of *Agee* take effect only after Davis puts the issue of voluntariness into question. *See Peden v. State*, 425 So. 2d 1356, 1358 (Miss. 1983)("When objection is made to the introduction of the confession, the accused is entitled to a preliminary hearing on the question of the admissibility of the confession."). Any deficiencies found in the record should be held against Davis since he failed to object to this issue at trial.

¶59. Further, there is no suggestion of coercion offered by Davis. The facts reflect that Davis voluntarily participated in the investigation. There is no indication in the record that Davis did not fully comprehend his constitutional rights. We note that it is passing strange that the statement of Davis was never in any form or fashion reduced to writing, a fact we find unique. Yet, the testimony of the sheriff and others was admitted without opposition or objection by Davis. This leaves us with no other option but to affirm.

## IX. DID THE TRIAL COURT ERR IN PROHIBITING EVIDENCE CONCERNING THE VICTIM'S PRIOR CONVICTION FOR POSSESSION OF MARIJUANA?

¶60. At trial, the State moved to prohibit the defense from introducing evidence that the victim was

on probation for a non adjudicated offense of possession of marijuana at the time of her death. The State also sought to exclude testimony that contraband was discovered on the premises. The State argued the evidence may be admissible as mitigation evidence during the sentencing phase of the trial, but was irrelevant and inadmissible during the guilt phase.

¶61. Davis argued the evidence was relevant as the State had already presented testimony that he went to the victim's trailer for drugs. Davis intended to question witnesses about the victim's drug habits and to use her probation for impeachment purposes.

¶62. The trial court granted the State's motion in limine with regard to the prior conviction and probation of the victim. We note that the record reflects significant testimony regarding drugs and drug paraphernalia from which the jury could surmise that the victim used illegal drugs.

¶63. In a homicide prosecution, "the character and reputation of the deceased are not issues." *Fisher v. State*, 481 So. 2d 203, 225 (Miss. 1985)(referring to Rule 404(a)(2), of Miss. R. Evid. as codification of this common law rule). *See also, Spivey v. State*, 58 Miss. 858, 864-66 (1881). In the case at hand, the prior conviction goes to the character of Hillman, the victim, which as a general rule is not admissible in the guilt phase of a murder prosecution. See Miss. R. Evid. 404(a)(2). Again, we are called upon to determine the admissibility of evidence pertaining to the character of the victim, which was simply not at issue. Some facts about victims come in during the course of a trial as part of the natural proof of a case in telling a complete story. A direct attempt to prove the character or lack thereof simply cannot be condoned by this Court. We recognize that in presenting an entire picture of the occurrence to the jury that often the jury will learn, without causing error, about the goodness or lack of goodness of a victim. The jury did in this case. They did so in an affirmable way. It is not reversible to exclude the specific criminal records of the victim because they simply have no relevance. Therefore, we find this issue to be without merit.

### XVI. DID THE TRIAL COURT ERR IN ADMITTING A PHOTOGRAPH OF DAVIS' RIGHT ARM?

¶64. At trial, Davis objected to the admission of a photograph that was taken of Davis' arm on the grounds that it was unknown as to what object caused a scratch appearing on Davis' arm. The trial court overruled the objection and admitted the photograph into evidence.

¶65. "[D]etermination as to whether photographs are admissible rests within the sound discretion of the trial judge whose decision will be upheld absent a showing of an abuse of discretion." *Givens v. State*, 618 So. 2d 1313, 1316 (Miss. 1993). "[S]o long as the photographs have some evidentiary value, the trial judge will not have abused that discretion." *Billiot v. State*, 454 So. 2d 445, 460 (Miss. 1984), *cert. denied, Billiot v. Mississippi*, 469 U.S. 1230 (1985). We further held that "[e]videntiary value of photographs can be found in describing circumstances of the killing and the *corpus delicti*." *Id.* at 460 (**citing** *Williams v. State*, 354 So. 2d 266 (Miss. 1978)).

¶66. In this instance, the trial court properly admitted the photograph into evidence. Without objection, the State introduced into evidence photographs of the bedroom in which Hillman was found, of the victim's body, and of blood stains located in the bathroom and on the washing machine. The photographs of the victim clearly showed that her fingernails were raised and torn off her fingers. The photograph was relevant to the theory that a struggle had occurred between the victim and her

assailant. As such, we do not find that the trial court abused its discretion, and we affirm the trial court on this issue.

## SENTENCING PHASE

### IV. DID NONCONFORMITY BETWEEN THE CAPITAL MURDER INSTRUCTION AND THAT DEFINING ARMED ROBBERY EXIST AND WAS IT ERROR?

¶67. We begin by noting that, at trial, Davis did not object to Instruction S-3 on the grounds that a variance existed between the indictment and the instruction; therefore, he is procedurally barred. *See Cantrell v. State*, 507 So. 2d 325, 331 (Miss. 1987)(stating, "Counsel's general objection did not point out the need for amending the indictment" to conform with proof.) Although we are not required to address this issue, we find that this issue is meritless.

¶68. The grand jury indictment was handed down during the September 1991 term and charged Davis with "**Robbery, as defined in Title 97, Chapter 3, Section 73 of the Mississippi Code of 1972**, contrary to Title 97, Chapter 3, Section 19(2)(e) of the Mississippi Code Annotated as amended."(emphasis added)

¶69. Defense counsel objected to the giving of Jury Instruction S-3 which reads:

> If you believe from all the evidence in this case beyond a reasonable doubt that Davis, Jeffrey K. Davis, in Greene County, Mississippi, on or about July 11, 1991, wilfully, unlawfully and feloniously, with the felonious intent to permanently deprive the owner thereof, did take steal and carry away or attempt to take, steal and carry away the personal property of Hillman, from the presence and against the will of the said Hillman, by violence to her person with a deadly weapon, then the same would constitute armed robbery.

> A thing is in the "presence" of a person, in respect to robbery, which is so within her reach, inspection, observation or control, that she could, if not overcome with violence or prevented by fear, retain her possession of it.

¶70. Davis notes that the instruction called for a verdict if the jury found Davis committed a killing in the course of an **armed robbery**. Davis complains that the wording of the indictment was inconsistent with the instruction. Davis alleges that this inconsistency allowed the State to broaden the charges of the indictment ("constructive amendment"). Finally, Davis contends that a constructive amendment, defined as one that modifies an essential element of the crime, amounts to reversible error.

¶71. This Court has often held that trial courts have no authority to grant substantive amendments to indictments. *See, e.g., Baine v. State*, 604 So. 2d 258, 260 (Miss. 1992)(holding that amendment as to time was one of form and not substance).[5] In *Hailey v. State*, 537 So. 2d 411 (Miss. 1988), the Court stated "if under the facts as alleged in the indictment a lesser offense is necessarily included, then a conviction of the lesser offense may be proper. The indictment must sufficiently allege the lesser crime so that Davis is notified of the lesser charge, however." *Id.* at 416 (finding that indictment for rape did not sufficiently notify defendant of charges for child fondling).

¶72. The test for whether an amendment to an indictment results in prejudice to Davis was stated as follows:

> [W]hether or not a defense under the indictment or information as it originally stood would be equally available after the amendment is made and whether or not any evidence accused might have would be equally applicable to the indictment or information in the one form as in the other; if the answer is in the affirmative, the amendment is one of form and not of substance.

*Reed v. State*, 506 So. 2d 277, 279 (Miss. 1987) (**quoting** *Bingham v. State*, 434 So. 2d 220, 223 (Miss. 1983)).

¶73. Because the indictment cited the robbery statute, Miss. Code Ann. § 97-3-73 (1972), Davis received adequate notice of the charges against him. Instruction S-3 defined robbery in terms of armed robbery which required the State to prove an element not required for a person to be charged with capital murder. Of import is the fact that any robbery occurred. All defenses and proof available to Davis remained equally applicable. Therefore, the amendment was one of form and not substance. The jury could not have convicted Davis for armed robbery and found him not guilty of robbery simply because armed robbery **is** robbery with a weapon. There existed no possibility that the jury convicted Davis on the basis of an extraneous element interjected by the jury charge. Any flaw which existed between the indictment and proof was harmless error, and Davis was not prejudiced as a result.

¶74. Because this issue is without merit and procedurally barred, we affirm.

### VIII. DID THE TRIAL COURT ERR IN LIMITING EXAMINATION OF WITNESS CLAYTON EVANS WITH REGARD TO HIS KNOWLEDGE OF THE VICTIM?

¶75. Clayton Evans appeared as a character witness for Davis during the sentencing phase of the trial. Evans was the owner of the trailer park in which Davis was raised. Evans also was a bail bondsman who had done business with Hillman. During redirect, Davis inquired into how well Evans knew the victim. Evans responded, "Well, just through business contact. As I stated, I was in the bail bonding business, and I was called." At this point the State objected. The State moved to limit Evans testimony regarding bail and prior offenses of the victim. Davis complained that the State "opened the door" by asking Evans whether he knew the victim in the case during cross-examination. A proffer was made in which Evans testified that he had made bail bonds for her twice on the misdemeanor offenses for possession of a controlled substance. The trial court did so limit the testimony of Evans. On appeal, Davis asserts that this information was relevant and necessary to the development of the case.

¶76. We find that the information was irrelevant to the mitigating circumstances and was therefore inadmissible. Even if relevant, the error was harmless because the jury already knew that Evans and the victim knew each other through his bail bond business. The jury was only left to wonder about the type of charges against Hillman.

¶77. "The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." *Johnston v. State*, 567 So. 2d 237, 238 (Miss. 1990). "The discretion of the trial judge must be exercised within the boundaries of

the Mississippi Rules of Evidence." ***Johnston v. State***, 618 So. 2d 90, 93 (Miss. 1993).

¶78. The testimony excluded goes toward the character of the victim. We have already stated in this opinion that character evidence of the victim is inadmissible because it is irrelevant. Testimony which simply is not "relevant to the consideration of whether the death sentence should be imposed" is excludable. ***Turner v. State***, 573 So. 2d 657, 667 (Miss. 1990), ***cert. denied, Mississippi v. Turner***, 500 U.S. 910 (1991)(affirming trial court determination to exclude testimony of impact death penalty would have on family of accused). The criminal history of the victim is not relevant to the concerns of the jury in sentencing Davis, except to say that it might decide the victim was worthy of death and give Davis a lighter sentence. Since this would lead to an improper result, we conclude that the testimony of Evans was properly excluded.

¶79. The trial court appropriately exercised its discretion for the following reasons: (1) the evidence regarding the victim's past misdemeanor conviction is not relevant to the issue of weighing aggravating and mitigating circumstances under Rule 401; (2) the evidence was not coming in to rebut an inference of peacefulness of a victim under Rule 404(a)(2); (3) the misdemeanor convictions of the victim are not a **pertinent** character trait under Rule 404(a)(2); and (4) the testimony presents a specific instance of conduct where no opinion or reputation testimony of the victim had previously been offered by the prosecution (that is, the prosecution did not open the door). Thus, the assigned error is without merit because no abuse of discretion can be found. Once more, the character of the victim, unless it relates to the crime, simply is not admissible. See Miss. R. Evid. 404(a)(2).

¶80. We caution, however, that this issue is distinct from issues concerning victim impact evidence which, if relevant, is admissible in the sentencing stage under ***Jenkins v. State***, 607 So. 2d 1171, 1183 (Miss. 1992) and ***Payne v. Tennessee***, 501 U.S. 808 (1991).

## X. WAS THE JURY GIVEN AN UNCONSTITUTIONAL DEFINITION OF HEINOUS, ATROCIOUS OR CRUEL, AN AGGRAVATING CIRCUMSTANCE THAT WAS UNSUPPORTED BY THE EVIDENCE IN THIS CASE?

### A. <u>Was the instruction unconstitutional</u>?

¶81. Davis complained of Sentencing Instruction S-3A, which reads:

**[Part I.]** The Court instructs the Jury that in considering whether the capital offense was especially heinous, atrocious or cruel; heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means designed to inflict a high degree of pain with indifference to, or even enjoyment of, the suffering of others.

**[Part II.]** You are further instructed that an especially heinous, atrocious or cruel capital offense is one accompanied by such additional acts as to set the crime apart from the norm of murders -- the conscienceless or pitiless crime which is unnecessarily torturous to the victim. **[Part III.]** If you find from the evidence beyond a reasonable doubt that Davis utilized a method of killing which caused serious mutilation, that there was dismemberment of the body prior to death, that Davis inflicted physical or mental pain before death, that there was mental torture and aggravation before death, or that a lingering or torturous death was suffered by the victim then you may find this aggravating circumstance.

(emphasis and partition added)

¶82. Davis complained that the instruction gave the jury too many options and failed to provide a "clear and objective" standard for imposing the death penalty. Davis also concluded that the whole instruction must be found unconstitutional since Part I of the instruction was disavowed in *Shell v. Mississippi*, 498 U.S. 1. (1990).

¶83. The *Jenkins* court reviewed all facets of the above instruction and approved the instruction as constitutional. *Jenkins v. State*, 607 So. 2d 1171, 1181 (1992). As to Part I, the *Jenkins* Court found that in accord with *Shell v. Mississippi*, 498 U.S. 1 (1990), that section alone was insufficient to adequately channel the jury's discretion. *Id.* "The issue then becomes whether the further language of the limiting instruction sufficiently narrowed the aggravating factor." *Jenkins*, 607 So. 2d at 1181.

¶84. This requires us to review the remaining parts of the instruction. As to Part II, its language is identical to that of Part II of the instruction reviewed by the *Jenkins* Court and held to be proper. *Id.* Finally, Part III of the instruction above is almost identical to the instruction given approval in *Hansen v. State*, 592 So. 2d 114 (Miss. 1991). "As a result, the language in part three of [Instruction S-3A] remains a viable definition of the 'especially heinous' factor. . . . Thus, when the instruction is read as a whole, *see Anderson v. State*, 381 So. 2d 1019, 1024 (Miss. 1980), the 'especially heinous' aggravating circumstance was properly narrowed for the jury's consideration." *Jenkins*, 607 So. 2d at 1182.

¶85. Therefore, this contention is without merit.

### B. <u>Did the evidence support the aggravating circumstances?</u>

¶86. Davis complains that the evidence was insufficient to support a finding that the offense was "especially heinous, atrocious or cruel." Davis asserts that the only reason it could be considered especially heinous, atrocious or cruel in the instant case is because the "narrowing" definition allowed for any number of theories for the aggravator to be considered in the instant case. Davis points to only two portions of evidence which supported the aggravating circumstances, including that the victim died in her bed and that Davis did not display an appropriate demeanor at trial. However, there are numerous other examples of testimony which support the aggravating circumstance.

¶87. The testimony of Dr. Hayne, an expert in pathology, revealed that the body had begun decomposition. There were two stab wounds to the back of the left hand, and an entrance gunshot wound to the back, and a second entrance and exit gunshot wound to her right flank, as well as three stab wounds across her chest. Hayne testified that due to the angle of the gunshot wounds, Hillman was likely lying down and was shot from above and behind. Other evidence in support of the aggravating circumstance included: (1) the pain of the first shot was equal to a half inch stick through the flank, (2) the pain of the second shot was intense because it grazed nerve tissue and a lung, (3) the two stab wounds to the hand were described as defensive posturing injuries, (4) the three knife wounds to the chest of Hillman were also described as defensive posturing wounds, with one wound causing two injuries to the heart as if it had been slightly removed and then inserted back into heart. Hayne opined that Hillman was first shot then stabbed due to the amount of bleeding, with death not being instantaneous. The photographs which depicted lacerations and bruises were used during the sentencing phase of the trial and demonstrated the cruelty of the crime and that the crime was

atrocious. The number of wounds, the number of lethal weapons used to inflict these wounds, and the fact that death was not immediate, but prolonged, provided support for the jury's findings that this murder was unnecessarily torturous to Hillman. After consideration of the evidence presented at trial, we find that sufficient evidence supported a finding of "especially heinous, atrocious and cruel."

¶88. The "especially heinous" aggravating circumstance was constitutionally narrowed as the limiting instruction submitted to the jury properly channeled the jury's deliberations. As there was sufficient evidence to support the jury's finding of this aggravating factor, this entire assignment of error is without merit.

### XI. WAS THE AGGRAVATING CIRCUMSTANCE OF MURDER COMMITTED FOR PECUNIARY GAIN INVALID IN THAT IT FAILED TO NARROW THE CLASS OF PERSONS ELIGIBLE FOR THE DEATH PENALTY?

¶89. To begin, this issue is procedurally barred since Davis failed to timely object to the statements of the prosecutor. *See Lockett v. State*, 517 So. 2d 1346, 1353 (Miss. 1987), *cert. denied, Lockett v. Mississippi*, 487 U.S. 1210 (1988). However, we observe that the issue is meritless.

### A. The "doubling argument" set forth by Davis fails.

¶90. Only two aggravating circumstances were submitted to the jury by the State. One was whether the capital offense was for pecuniary gain. The second was whether the capital offense was especially heinous, atrocious and cruel.

¶91. Davis complains that the State failed to provide an adequate narrowing device for imposing the death penalty. Specifically, Davis argues that the aggravating circumstances of robbery and pecuniary gain were doubly weighed by the jury.[6] Thus, Davis asserts that "where the aggravating circumstances duplicate the felony inherent in the felony-murder conviction, there has been no narrowing; where there has been no narrowing, the death sentence violates the Eighth Amendment." *State v. Middlebrook*, 840 S.W.2d 317, 344 (Tenn. 1992), *cert. dismissed as improvidently granted, Tennessee v. Middlebrook*, 510 U.S. 124 (1993). Davis points to commentary made by the prosecutor during closing arguments:

> Number one, whether the capital offense of the murder during the robbery was commit [sic] for pecuniary gain. We have to prove that to you beyond a reasonable doubt. I think we proved it to you yesterday by your verdict.
>
> * * *
>
> If you find it was committed for pecuniary gain beyond a reasonable doubt, it's an aggravating circumstance. That in and of itself is an aggravating circumstance, that you can consider the death penalty. The second one that's been submitted for you to consider if we prove it to you beyond a reasonable doubt was whether the capital offense was especially heinous, atrocious and cruel.
>
> * * *
>
> I think we have proved [sic] those things. I think we have proved that he actually killed

Hillman, contemplated it, lethal force was used. In the only attempted [sic] to be killed we have proven the elements, we have proven for pecuniary damages. You can't deny that. Your verdict yesterday said so; murder in the commission of robbery.

¶92. The State noted that the language of the instruction differed from the terminology used by the prosecutor during closing arguments. The State asserted that because the instructions were proper, the decisions of *Ladner v. State*, 584 So. 2d 743, 763 (Miss.), *cert. denied, Ladner v. Mississippi*, 502 U.S. 1015 (1991) and *Willie v. State*, 585 So. 2d 660 (Miss. 1991)[(7)] do not apply.

¶93. Davis contends that "double counting of a felony [was] constitutionally impermissible." *Pinkney*, 538 So. 2d 329, 358 (Miss. 1988). In *Pinkney*, this Court referred to the United States Supreme Court decision, *Lowenfield v. Phelps*, 484 U.S. 231 (1988), wherein the Supreme Court held:

> [The] "narrowing function" was performed by the jury at the guilt phase when it found defendant guilty of three counts of murder under the provision that "the offender has a specific intent to kill or to inflict great bodily harm upon more than one person." The fact that the sentencing jury is also required to find the existence of an aggravating circumstance in addition is no part of the constitutionally-required narrowing process, and so **the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm**.

*Pinkney*, 538 So. 2d at 358-59 (emphasis added). "The doubling up argument has been repeatedly raised and rejected by this Court." *Id.* Here, the jury did not receive an instruction which allowed the jury to consider both the pecuniary gain aspect of robbery and the crime of robbery as separate aggravating circumstances in order to return the death penalty. The instruction which properly stated the aggravating circumstances cured the misstatements of the prosecutor. "It has long been the rule that if instructions correctly state the law when read together as a whole, then there is no error." *Roberts v. State*, 458 So. 2d 719, 721 (Miss. 1984). Therefore, this Court rejects once more the doubling argument where the aggravating circumstance was properly presented to the jury. This issue is without merit.

### XII. WAS THE SENTENCING INSTRUCTION S-3 ERRONEOUS IN THAT IT CONTAINED A SIGNATURE LINE ONLY UNDER THE OPTION OF DEATH?

¶94. Davis complains that the central sentencing instruction was not in the proper form because the instruction provided a signature line underneath the "death penalty" option and no signature line underneath the "life imprisonment" option nor underneath the "hung jury" option. Although Davis objected to several aspects of the State's submitted instructions, Davis did not object orally nor in writing to the signature line (or lack thereof). At no time during a rather lengthy discussion at trial did he object to Instruction S-3 because of the signature line. Therefore, we must conclude, once again, that Davis is procedurally barred on this issue.

¶95. Not only is the issue procedurally barred, it is factually distinguishable from *Jenkins v. State*, 607 So. 2d 1171 (Miss. 1992). We advised in *Jenkins* that the central sentencing instructions should not allow a jury to neglect any of the sentencing options. The instruction in *Jenkins* was similar to S-3 of the case at hand, yet significantly different. The *Jenkins* instruction provided a signature line for

the foreman's signature following the death option which appeared on page three of the instruction. However, no spaces for the foreman's signature followed the options of life imprisonment or a hung jury which appeared on page four of the instruction. *Jenkins*, 607 So. 2d at 1180. The Court stated, "We are concerned that the instruction as **written and printed** could cause the jury to neglect Options Two and Three. Upon a retrial, we suggest that the trial court revise this instruction to more clearly instruct the jury." *Id.* (emphasis added)(noting that *Jenkins* was remanded on other grounds).

¶96. The instruction in question contained all options on a single page. We conclude that the omission of signature lines under all three options was not reversible error. Therefore, we find that the issue is procedurally barred and meritless.

### XIII. WERE THE SENTENCING INSTRUCTIONS ERRONEOUS IN THAT THEY FAILED TO INFORM THE JURY THAT THEY NEED NOT BE UNANIMOUS IN FINDING MITIGATING CIRCUMSTANCES?

¶97. Davis complains that the jury was never instructed that mitigating circumstances were to be found individually and not unanimously prior to being considered in the weighing process. In summary, Davis argues that because findings of aggravating circumstances had to be unanimous, reasonable jurors may have reached a like conclusion concerning the finding of mitigating circumstances. Davis relies upon *McKoy v. North Carolina*, 494 U.S. 433 (1990); *Mills v. Maryland*, 486 U.S. 367 (1988); and *State v. McNeil*, 395 S.E.2d 106 (N.C. 1990), *cert. denied, North Carolina v. McNeil*, 499 U.S. 942 (1991)(holding that oral instructions which require a jury to find mitigating circumstances unanimously to be reversible error).

¶98. Other courts have extended the holdings of *McKoy* and *Mills* to reverse death sentences where the jury was not told explicitly that mitigating circumstances are to be found and weighed by individual jurors. However, this Court in *Hansen v. State*, 592 So. 2d 114, 149-50 (Miss. 1991), declined to extend these holdings. Where the instruction does not use the words "unanimously" nor "unanimous" in the mitigating circumstances portion of the jury instructions "but instead is found only in the aggravating circumstances portion," we have held that the instruction does not offend the holding in *Mills*. *Id.* This Court has previously rejected this argument. *See, e.g., Ladner v. State*, 584 So. 2d 743, 760 (Miss. 1991); *Willie v. State*, 585 So. 2d 660, 681 (Miss. 1991); *Turner v. State*, 573 So. 2d 657, 668 (Miss. 1990); and *Shell v. State*, 554 So. 2d 887 (Miss. 1989), *reversing on other grounds*, 498 U.S. 1 (1990).

¶99. As to mitigating circumstances, Sentencing Instruction S-2 in the case **sub judice** reads:

> Next, to return the death penalty, you must find that the mitigating circumstances -- those which tend to warrant the less severe penalty of life imprisonment -- do not outweigh the aggravating circumstances -- those which tend to warrant the death penalty.

> If you find from the evidence that one or more of the preceding elements of mitigation exists, then you must consider whether it (or they) outweigh(s) or overcome(s) the aggravating circumstances(s) you previously found. In the event that you find that the mitigating circumstances(s) do not outweigh or overcome the aggravating circumstances(s), you may impose the death penalty sentence. Should you find that the mitigating circumstance(s) outweigh or overcome the aggravating circumstance(s), you shall not impose the death

sentence.

\* \* \*

If one or more of the above aggravating circumstances is found to exist, then you must consider whether there are mitigating circumstances which outweigh the aggravating circumstance(s).

¶100. As for oral instruction, the record reads, "Whereupon the jury was brought in and seated in the jury box, the court read the instructions to the jury, and the closing arguments were made by counsel." From this statement, we must assume that the instructions were read correctly. Furthermore, Davis fails to highlight any portion of the record in which the jury was instructed orally or in writing that it should unanimously find mitigating circumstances. As it stands, Instruction S-2 is not violative of the *Mills/McKoy/McNeil* line of cases. At no point was the jury instructed that it was to determine mitigating circumstances unanimously. Had there been an instruction to the jury that they were to find the mitigating circumstances unanimously, then Davis would have presented a meritorious claim. Finding no such error, this Court concludes that the issue is without merit.

### XVII. SHOULD THE DEATH SENTENCE BE VACATED AS IT IS DISPROPORTIONATE GIVEN THE CIRCUMSTANCES OF THE CRIME AND THE BACKGROUND OF DAVIS?

¶101. Davis prays that the Court vacate his death penalty because he committed the murder while under a heavy drug influence and because he had no prior criminal history.

¶102. Miss Code Ann. § 99-19-105(3) entitled "Review by State Supreme Court of imposition of death penalty" reads:

With regard to the sentence, the Court shall determine:

(a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;

(b) Whether the evidence supports the jury's or judge's finding of statutory aggravating circumstances as enumerated in Section 99-19-101; and

(c) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and Davis.

#### A. <u>The verdict was not in violation of Miss. Code Ann. § 99-19-105(3)(a).</u>

¶103. A thorough review of the record reveals that the death penalty was not imposed due to the influence of passion, prejudice or any other arbitrary factor.

#### B. <u>The crime is not disproportionate under Miss. Code Ann. § 99-19-105(3).</u>

#### 1. After comparison, the death penalty is not disproportionate to other similar cases.

¶104. In accordance with the legislative mandate, this Court has considered similar cases involving murder committed in the course of robbery.[8] After review of these cases, we believe the death

penalty in the case at hand is not excessive nor disproportionate.

## 2. This case is similar to other cases where the death penalty was upheld.

¶105. In *Shell v. State*, 554 So. 2d 887, 907 (Miss. 1989), the victim died of a series of blows, one of which caused her brain to swell. Upon proportionality review, this Court noted that the evidence against Shell was "very imposing." *Id.* Included in the evidence of the *Shell* case was a written confession to the sheriff, footprints from the scene matching Davis's shoes, and testimony that Davis showed the sheriff where the knife, tire iron, and gloves were located. *Id.* "The only witness offered by the defense was Shell himself, and no alibi witnesses were offered." *Id.* Finally, there was some evidence that Shell had a history of alcohol and substance abuse. *Id.* The *Shell* court held that the aggravating circumstances were supported by the evidence and that the death penalty was "proportionate to the penalty imposed in similar cases, considering Davis and the crime." *Id.* The facts in the case *sub judice* closely follow the facts in *Shell*. As such, we find that the death penalty is proportionate. *See Lanier v. State*, 533 So. 2d 473, 492-3 (Miss. 1988).

## C. The evidence supports the aggravating circumstances.

¶106. We addressed this concern in Issue X and have concluded that there was sufficient evidence to support the aggravating circumstances.

## D. The emotional and mental condition of Davis does not require a reversal.

¶107. Davis suggests that he is comparable to the defendant in *Edwards v. State*, 441 So. 2d 84 (Miss. 1983), in which a sentence of death was reversed because the defendant suffered from schizophrenia of a paranoid type. A similar comparison was suggested by the defendant in *Conner v. State*, 632 So. 2d 1239, 1265 (Miss. 1994), wherein the Court stated, "*Edwards* is of no precedential value to us since it represents a plurality vote. . . . *Edwards* is also inapplicable here since the record does not indicate that Conner was ever diagnosed as suffering from paranoid schizophrenia." *Id.* Equally true for Davis, the record in the case at hand contains no evidence that Davis suffered any mental illness. At trial, however, Davis did try to argue that he was under a drug-induced psychosis which caused him to become violent at the time of the murder. Davis brought the issue out during cross-examination of the State forensics specialist, Sam Howell. Howell could not give an opinion as to whether Davis suffered from a cocaine psychosis, even with the levels of cocaine indicated in Davis' blood tests. Howell testified that there was simply no way to know. Davis did not offer any other evidence in support of this theory. Therefore, we find that the unsupported claim of a cocaine psychosis does not require a reversal.

## E. No cases were found where Davis has such a limited criminal background.

¶108. There are several factors to be considered in Davis' favor. At no point did Davis refuse to cooperate with the police investigation. He called the Sheriff and told the Sheriff that Hillman had been killed and that he had done it. He consented to the search of his house and truck. Davis points to his willing surrender at his house and his walking out of the house with his bags as signs of cooperation. Davis told police where his clothing and shoes were located. Davis suggests that he was high on cocaine at the time of the murder. This is supported by the urinalysis, which found cocaine and the cocaine derivative, indicating that he had used cocaine very recently. Investigator Fortenberry

testified that Davis did not have any prior felony conviction although he had twice been convicted of driving under the influence.

¶109. However, this Court does not engage in "reweighing" of aggravating and mitigating circumstances, and there is no precedent for reversing a sentence of death simply because the defendant was friendly to the police. The jury had all of these facts before them, and it still determined that Davis deserved the death penalty. Therefore, we affirm the imposition of the death penalty.

### XVIII. DOES THE CUMULATION OF ERROR IN THIS CASE DEMAND REVERSAL?

¶110. Davis prays that the cumulative effect of the errors asserted on appeal demands that the case be reversed. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." *Johnson v. Mississippi*, 486 U.S. 578 (1988)(**quoting** *Gardner v. Florida*, 430 U.S. 349(1977)). This Court has recognized that "near error" which is not sufficient to require a reversal and remand may warrant such when taken together. *Stringer v. State*, 500 So. 2d 928, 946 (Miss. 1986)(vacating a death sentence in view of numerous "near-errors" which violated a defendant's right to fair trial). The assigned errors in this case have not been "near errors." Even those which are procedurally barred are meritless. Because it cannot be said that the cumulative effect of near error in the case at hand has resulted in a violation of Davis' right to a fair trial, we find this issue, too, is without merit.

**¶111. CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH BY LETHAL INJECTION AFFIRMED. EXECUTION DATE TO BE SET WITHIN SIXTY DAYS OF FINAL DISPOSITION OF THIS CASE PURSUANT TO MISS. CODE ANN.§ 99-19-105 (7) (1972) AND M.R.A.P. 41(a).**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**

1. The issues will be discussed according to pre-trial, guilt, and sentencing phases of the trial rather than numerically to provide a more thorough analysis of the law.

2. The transcript reads, "Attorneys leave courtroom to consider jury challenges"; "We will stand in recess for about ten minutes to give the lawyers an opportunity to give me a list of jurors who will serve on this case"; "Whereupon a bench conference was had and counsel went out to consider their challenges, after which the following proceedings were had in open court"; and "Whereupon a bench conference was had, after which counsel went out to select the jury."

3. Rule 5.02 concerns voir dire and directs that "[n]o hypothetical questions requiring any juror to pledge a particular verdict will be asked."

4. The *Faraga* Court also cited with approval a ruling by the Tennessee Supreme Court wherein the

Tennessee court stated that when the accused relies upon the mitigating circumstance of no prior criminal history "he becomes subject to rebuttal evidence offered by the prosecution showing prior criminal activity." *Faraga*, 514 So. 2d at 304 (citing *Tennessee v. Matson*, 666 S.W.2d 41 (Tenn.), *cert. denied*, 469 U.S. 873(1984)).

5. Miss. Code Ann. § 99-17-13 allows for the trial court, at its discretion, to amend the indictment according to the proof when changes are "not material to [the] case."

6. "Doubling" is used to refer to situations where a crime such as robbery is used both as the underlying felony to support a capital murder charge and as an aggravating circumstance to support the imposition of a death sentence.

7. These cases held that "pecuniary gain" and the underlying offense (robbery) could not be doubly weighed by the jury when considering the aggravating circumstances. The State refers to this type of argument as "stacking" where both robbery and pecuniary gain are submitted to the jury as aggravating circumstances.

8. Those cases wherein the Court held the death penalty to be disproportionate include: *Reddix v. State*, 547 So. 2d 792 (Miss. 1989) (finding death penalty disproportionate where defendant suffered from mental illness and mild retardation and murder was accomplished by another who received life sentence); *Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988) (noting insufficient proof defendant knew victim was a police officer); *White v. State*, 532 So. 2d 1207 (Miss. 1988) (holding evidence was insufficient to enable a reasonable fact finder to determine that defendant had intent to kill, and thus insufficient to impose death penalty); *Coleman v. State*, 378 So. 2d 640 (Miss. 1979) (holding death penalty was excessive where defendant was first fired upon by victim and defendant did not shoot eyewitness).

Those cases wherein the Court held the death penalty to be proportionate include: *Pinkney v. State*, 538 So. 2d 329 (Miss. 1988)(finding evidence indicating defendant deliberately committed heinous crime; no evidence defendant suffered from mental aberration, nor acted out of fear); *Lanier v. State*, 533 So. 2d 473 (Miss. 1988) (holding that death penalty was not disproportionate, despite evidence that defendant was mildly retarded, experienced hallucinations, was twice previously placed in mental institutions, and was a chronic drug abuser); *Dufour v. State*, 453 So. 2d 337 (Miss. 1984), *cert. denied, Dufour v. Mississippi*, 469 U.S. 1230 (1985)(considering defendant committed cold-blooded murder of victim for pecuniary gain in manner which was heinous, atrocious, and cruel death penalty was not disproportionate); *Tokman v. State*, 435 So. 2d 664 (Miss. 1983), *cert. denied, Tokman v. Mississippi*, 467 U.S. 1256 (1984)(upholding death penalty where defendant stabbed cab driver during course of robbery); *Evans v. State*, 422 So. 2d 737 (Miss. 1982), *cert. denied, Evans v. Mississippi*, 461 U.S. 939 (1983)(considering both crime and manner in which it was committed and defendant, death penalty was not disproportionate).