# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-DR-00511-SCT

*JEFFREY KELLER DAVIS*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT: 06/05/1992

| | |
|---|---|
| TRIAL JUDGE: | HON. BILL JONES |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | SAMUEL E. L. ANDERSON |
| | CYNTHIA L. ELDRIDGE |
| | WALTER E. WOOD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | APPLICATION FOR LEAVE TO FILE MOTION TO VACATE JUDGMENT AND/OR SENTENCE OF DEATH GRANTED IN PART AND DENIED IN PART - 7/1/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/22/99 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. On Friday, July 12, 1991, Greene County Sheriff Tommy Miller received a phone call at home from Jeffrey Keller Davis. Davis identified himself and told Miller that he had killed Linda Hillman. Sheriff Miller knew Davis and Hillman. Miller and a deputy went to Davis's home and found him with his bags packed, waiting for Miller. Davis told Miller that he had gone to Hillman's trailer early on the morning of July 11 to get money to buy drugs. When Hillman refused to give him any money, he shot and stabbed her to death.

¶2. Jeffrey Keller Davis was convicted in May 1992 in Greene County for the capital murder of Linda Hillman while engaged in robbery. His conviction and death sentence were affirmed by this Court in ***Davis v. State***, 684 So.2d 643 (Miss. 1996), *cert. denied*, ***Davis v. Mississippi***, 520 U.S. 1170 (1997). Davis filed his Application for Leave to File Motion to Vacate Judgment and/or Sentence of Death in this Court on April 1, 1998.

<u>**STATEMENT OF ISSUES**</u>

¶3. Davis's application raises the following issues:

**I. Davis was denied the effective assistance of counsel.**

1) Counsel failed to contest the constitutionality of Davis's confession.

2) Counsel failed to move to suppress evidence retrieved from Davis's home and truck.

3) Counsel's cross-examination of the sheriff bolstered the State's case.

4) Counsel failed to contest evidence retrieved prior to the initial appearance even though a judge was available.

5) Counsel failed to object to the admission of testimony regarding decomposition of the victim's body even though it incited bias and passion in the jury.

6) Counsel's defense of Davis in the sentencing phase was deficient as a matter of law-Counsel failed to investigate the existence of character witnesses and inadequately prepared and examined the ones present.

7) Davis was not assigned two attorneys for his capital defense in violation of the Fifth and Sixth Amendments to the United States Constitution.

8) Counsel failed to request a change of venue.

9) Counsel failed to move to quash the jury based on improper contact with the State.

A) Jury members were taken on a tour of the Greene County Jail where Davis was held the week before trial and discussed Davis's case with guards.

B) Jury members mingled with Assistant District Attorney Daryl Dryden the week prior to trial.

10) Counsel failed to investigate or offer any independent evidence of cocaine psychosis.

11) Counsel failed to explain a plea bargain offered to Davis.

12) Counsel failed to object to Instruction S-3 which was defective in violation of state law and the Eighth Amendment.

13) Counsel failed to request a special jury venire prior to trial date.

14) Counsel failed to have to have the court reporter record the jury selection process.

15) Counsel failed to object to the nonconformity between S-3, S-2 and the indictment.

16) Counsel failed to raise the *M'Naghten* Rule in contesting the State's voluntary intoxication instruction.

17) Counsel failed to pose a specific objection to pain testimony by Dr. Hayne.

18) Counsel failed to require the prosecution to lay the proper foundation for introduction of the highly prejudicial photograph of Davis's right arm.

19) The cumulative errors of counsel deprived Davis of his Sixth Amendment right to the effective assistance of counsel.

**II. Juror Denmark worked with Davis's mother but failed to reveal this fact during voir dire.**

**III. The prosecution improperly elicited evidence regarding Davis's alleged lack of remorse at trial.**

**IV. The many instances of prosecutorial misconduct violated Jeffrey Davis's right to a fair trial.**

**V. The trial court erred in denying defendant's instruction on the lesser included offense of murder.**

**VI. The trial court erred in limiting examination of witness Clayton Evans with regard to his knowledge of the victim.**

**VII. The trial court erred in prohibiting evidence concerning the victim's prior conviction for possession of marijuana.**

**VIII. The aggravating circumstance of whether the capital offense was committed for pecuniary gain was invalid and should not have been submitted to the jury.**

**IX. The jury should not have been instructed to consider the heinous, atrocious or cruel aggravating circumstance under the facts in this case.**

**X. The jury was given an unconstitutional definition of the heinous, atrocious or cruel aggravating circumstance in the sentencing phase of trial.**

**XI. The sentencing instructions were erroneous in that they failed to inform the jury that they need not be unanimous in finding mitigating circumstances.**

**XII. The trial court erred in allowing the district attorney to ask prospective jurors about their ability to return a death sentence given specific facts.**

**XIII. The use of the trial judge questionnaire and Miss. Code Ann. § 99-19-105 violated the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.**

**XIV. The Court's proportionality review was based on erroneous evidence.**

**XV. The death sentence should be vacated as it is cruel and unusual punishment in violation of the Eighth Amendment and disproportionate given the circumstances of the crime and the background of the defendant.**

**XVI. The cumulation of error in this case demands reversal.**

¶4. Davis also filed in this Court a Motion for Appointment of Counsel, Payment of Reasonable Litigation Expenses and Suspension of Briefing. The motion asks for relief similar to that granted by this Court in *Jackson v. State*,1999 WL 33904 (Miss. 1999).

## DISCUSSION OF LAW

### I. Davis was denied the effective assistance of counsel.

¶5. Jeffrey Davis first alleges that George Shaddock, sole trial and appellate counsel, was ineffective. The standard for such a question was provided by this Court in *Foster v. State*, 687 So.2d 1124, 1129-30 (Miss. 1996):

> "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The test is two pronged: *The defendant must demonstrate that his counsel's performance was deficient, and that the deficiency prejudiced the defense of the case. Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Washington v. State*, 620 So.2d 966 (Miss.1993). "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Stringer v. State*, 454 So.2d 468, 477 (Miss.1984), *citing Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Stringer* at 477, *citing Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *State v. Tokman*, 564 So.2d 1339, 1343 (Miss.1990).

> Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

> *Stringer* at 477; *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. In short, defense counsel is presumed competent. *Johnson v. State*, 476 So.2d 1195, 1204 (Miss.1985); *Washington v. State*, 620 So.2d 966 (Miss.1993).

> Then, to determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."*Mohr v. State*, 584 So.2d 426, 430 (Miss.1991). This means a "probability sufficient to

undermine the confidence in the outcome." *Id.* The question here is

whether there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death.

*Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068.

There is no constitutional right then to errorless counsel. *Cabello v. State*, 524 So.2d 313, 315 (Miss.1988); *Mohr v. State*, 584 So.2d 426, 430 (Miss.1991) (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end. *Neal v. State*, 525 So.2d 1279, 1281 (Miss.1987); *Mohr v. State*, 584 So.2d 426 (Miss.1991).

## 1) Counsel failed to contest the constitutionality of Davis's confession.

¶6. This Court recounted the events of Jeffrey Davis's statements to law enforcement as follows:

On Friday, July 12, 1991, [Greene County] Sheriff Tommy Miller received a phone call at home from Jeffrey Davis. Davis identified himself to Sheriff Miller and told the Sheriff that he had killed Linda Hillman. Sheriff Miller had no prior notice of foul play at Linda Hillman's trailer located in Greene County, Mississippi. Sheriff Miller knew both Davis, the defendant, and Hillman, the victim. Davis told Miller to come and get him at his home. Miller went to Davis' home with Deputy Sheriff Henry Benjamin. When they arrived, Davis came out of his home carrying two bags of clothes. Davis began to tell his story to Sheriff Miller, but Miller stopped him and read Davis his *Miranda* rights. Davis told Miller that he understood his rights and finished telling Miller his story.

Davis told Sheriff Miller the following: (1) that Davis went to Hillman's trailer early Thursday morning, July 11, 1991; (2) that he killed Hillman about 6:00 a.m.; (3) that he had borrowed two hundred dollars from Hillman the previous Monday ; (4) that he knew she had more money; (5) that he went there to rob Hillman in order to buy more drugs; (6) that he killed her when she refused to give him more money; (7) that after the killing he walked through a corn field, and (8) that he went to Pascagoula, Mississippi to buy more drugs. Davis admitted stabbing Hillman with a knife. Davis had the knife he had used to kill Hillman on him and gave the knife to Sheriff Miller. Davis also told Miller the location of clothing and shoes that Davis had worn the morning of the murder. Miller, accompanied by Davis, found the items submerged in separate creeks. After retrieving these items, Miller and Benjamin took Davis to the sheriff's office and advised him again of his rights under the Constitution and required by *Miranda*. Davis signed a waiver of rights form and retold the story to Sheriff Miller. Sheriff Miller then went to Hillman's trailer where he found her lying dead on her bed.

*Davis*, 684 So.2d at 648-49.

¶7. George Shaddock never moved to suppress any of Davis's statements and never objected to the admission of any of the statements admitted through Sheriff Miller based on voluntariness. Davis attempted to raise this issue on direct appeal, but this Court found that the issue was procedurally barred for failure to raise the issue at trial. *Davis*, 684 So.2d at 657-58. The Court further noted that none of Davis's statements were ever reduced to writing, which this Court found "passing strange" and "unique." *Davis*, 684

So.2d at 658.

¶8. Davis now argues that Shaddock was ineffective for failure to attack the voluntariness of Davis's statements based on his alleged drug use and the fact that Davis believed that his confession would lead to help from Sheriff Miller. First, Davis does not specifically state which statements he is questioning here. Davis made at least four separate statements. The standard of review for such a question may be found in *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305, 54 USLW 4789 (U.S.N.J., 1986), where the U.S. Supreme Court stated:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. . . .

Though *Kimmelman* deals with a Fourth Amendment question while this question arises out of the Fifth Amendment rights to remain silent and against self-incrimination, we find that the standard should be the same.

¶9. Davis cites *Jenkins v. State*, 607 So.2d 1171, 1175 (Miss. 1992), where this Court stated: "The admission of a drug-induced confession would clearly violate a defendant's right against self-incrimination guaranteed by the U.S. Constitution and the Mississippi Constitution." Davis also cites *State v. Williams*, 208 So.2d 172 (Miss. 1968), as an example of a confession excluded because of the influence of alcohol. Williams's situation was different than Davis's; Williams was a habitual drunkard and the record showed that he "was in an acute, rampant state of intoxication equivalent to mania" and suffered from a "deranged and psychotic mental imbalance." *Williams*, 208 So.2d at 175. Davis also states that his confession was the result of coercion in that Davis believed that "[a]fter talking to the Sheriff, I thought he would help me if I turned myself in." Davis cites *Abram v. State*, 606 So.2d 1015, 1030 (Miss. 1992), where this Court stated that a voluntary admissible statement was one that was not "the proximate result of any promises, threats or other inducements."

¶10. As to the statement that Davis made to Sheriff Miller over the phone that he had killed Linda Hillman in her trailer and wanted Sheriff Miller to come get him, there is no suggestion that this was not unsolicited and voluntary, except for the argument that Davis was intoxicated at the time. This statement would not involve *Miranda* warnings, as there was no custodial interrogation. As to the second statement, made to Sheriff Miller when he and his deputy went to pick Davis up, this statement also did not involve interrogation until Sheriff Miller stopped Davis from telling his story and informed him of his *Miranda* rights. Miller stated that Davis was very calm and unemotional at this time. Miller stated that Davis acted normal and did not smell of alcohol. Davis told Miller that he had been using drugs, and Miller saw what he believed to be more than one needle mark on Davis's arm. The third statement was made to Sheriff Miller once he and Davis arrived back at the courthouse. According to Miller, he informed Davis of his rights again, and Davis told the same story he had told earlier. The fourth statement(s) would have been any that Davis made during the search of his home. Kevin Fortenberry, an investigator with the Mississippi Highway Patrol, observed Davis while his house was being searched and stated that Davis had a calm, cocky attitude. Don Sumrall, crime scene investigator for the Mississippi Crime Lab, also observed Davis while his house was being searched and stated that Davis was calm and showed no remorse.

¶11. The first step in the analysis under *Strickland v. Washington* and *Kimmelman v. Morrison* is

consideration of whether Shaddock's failure to file a motion to suppress one or any of Davis's statements was deficient conduct. It is certainly unusual in a capital case that there was no attempt by defense counsel to suppress the statement(s), and we would be hard-pressed to attribute this to trial strategy. On the other hand, it does not appear that counsel should be required to file frivolous motions. On this record it is difficult to see how the trial court, given the proper standard of review, would have excluded the statements. By all accounts Davis was calm, in control of his faculties, and possessed a detailed and helpful memory as to his actions during and after the murder. The allegation made in Davis's affidavit was that the Sheriff was an acquaintance of Davis's whom Davis thought would help him if he turned himself in. Davis says nothing about what it was Sheriff Miller might have said to make him think this, and nothing as to whether it may have been improper. Based on this record, there is little to support the notion that Shaddock would have been successful in suppressing Davis's statements. Assuming that Shaddock could have produced a basis for suppression of some of Davis's statements at a hearing, we find no basis on which the initial statement, made over the phone from Davis to Miller, could have been suppressed.

¶12. As to the question of prejudice, and whether the verdict would have been different had the evidence in question been excluded, there is once again the question of just which statements are at issue. It is difficult to see how the initial phone call admission from Davis to Miller could have been excluded. That statement would have led to a search of Davis, which would have elicited one murder weapon, the knife; Hillman's body would have been discovered at her trailer; and a warrant for the search of Davis's house could have been obtained. We find that Davis has failed to make the requisite showing of deficient conduct and prejudice required under *Strickland v. Washington*.

### 2) Counsel failed to move to suppress evidence retrieved from Davis's home and truck.

¶13. This Court noted that Davis consented to a search of his home and truck. ***Davis**, 684 So.2d at 649.* Evidence collected from the house included a .22 caliber rifle which had fired one of the spent cartridges found in Hillman's trailer; marijuana; and the shirt Davis said he was wearing when he killed Hillman. A search of his truck revealed blood on the seat and on a jack; and a "shooter's kit" with syringes.

¶14. Davis argues that Shaddock was ineffective for failure to object to the admission of this evidence. Davis relies on the same argument he made under Issue I, that he could not have given his consent because of drug intoxication and any statements which led to other evidence were coerced or inadmissible also because of lack of consent. The same analysis is applicable to this question. Even if Shaddock's conduct was deficient for failure to attempt to have the search results suppressed, it still appears that the State could have eventually searched the house based on a warrant based on Davis's initial, voluntary statement to Sheriff Miller and the inevitable discovery of Hillman's body. As such, Davis has not shown a reasonable probability that the evidence introduced at his trial would have been altered. This issue is without merit.

### 3) Counsel's cross-examination of the sheriff bolstered the State's case.

¶15. Davis next argues that Shaddock's cross-examination of Sheriff Miller bolstered the State's case, supplementing his argument that Shaddock should have filed a motion to suppress a good bit of what Miller testified to, and adding that a motion to suppress would have resulted in a pretrial hearing, which could have served as a kind of dry run on Miller's cross-examination. Shaddock's cross-examination went over Miller's taking Davis into custody, Davis's statements to Miller, Miller's initial search of Davis's house and of Linda Hillman's trailer, and Miller's contacting outside help when the nature of the crime became apparent. The testimony showed that Sheriff Miller had gone about his investigation slowly and carefully and had not

exceeded his expertise. Shaddock was able to first raise the inference during this cross-examination that Davis had been under the influence of cocaine and/or other drugs at the time of the murder and at the time of his statements, and also introduced evidence of drug availability/use at the Hillman trailer. He introduced evidence that Davis had gotten $200 from Hillman for drugs just before the murder, setting up an argument that there was no need for him to get additional money, and got Miller to admit that he had not verified Hillman's boyfriend's alibi for the time of the murder. Davis does not say that Shaddock's cross-examination of Miller should have been shorter, or longer, and should have covered different subjects. The cross-examination did not bolster the State's case, and this issue is without merit.

### 4) Counsel failed to contest evidence retrieved prior to the initial appearance even though a judge was available.

¶16. Jeffrey Davis was taken into custody on the evening of July 12, 1991. He alleges that he was not given a timely initial appearance before a judge pursuant to then Uniform Criminal Rule of Circuit Court Practice 1.04, even though the authorities did obtain a court order from Circuit Judge Kathy King Jackson on Saturday, July 13, to get blood samples from Davis. The State did not dispute Davis's allegation that the failure to provide a prompt initial appearance was not due to lack of access to a judge. Davis alleges that Shaddock was ineffective for failure to object to much of the evidence that was introduced against him because it was obtained in the absence of an initial appearance.

¶17. Davis cites *Abram v. State*, 606 So.2d 1015 (Miss. 1992), and *Coleman v. State*, 592 So.2d 517 (Miss. 1991), where this Court found reversible error in part due to failure to provide an initial appearance according to Rule 1.04. However, in each of these cases, there was error in addition to failure to follow Rule 1.04. In *Abram* the confession in question was found to be coerced; in *Coleman* the confession was obtained pursuant to an illegal arrest. The State points out that in *Morgan v. State*, 681 So.2d 82 (Miss. 1996), and *Veal v. State*, 585 So.2d 693 (Miss. 1991), this Court found that a violation of Rule 1.04 alone will not result in the suppression of evidence or reversible error where the defendant was informed of his rights and made a knowing and voluntary waiver.

¶18. Davis argues here that the State obtained "every piece of evidence used in this case prior to initial appearance." This may be true, but the fact remains that the State obtained, first, Davis's confession over the phone to Sheriff Miller. This would have led both to Davis and the murder weapon, the knife, that Davis was carrying at the time he was met by Sheriff Miller. Even if Davis had been given an initial appearance at that time, the State would have had a confession plus the physical evidence Davis had in his possession and at Hillman's trailer. It appears that the State could have then gotten a search warrant for Davis's house even absent Davis's consent, as well as for the collection of blood from Davis. An initial appearance might have resulted in less evidence being gathered, but it would not have resulted in suppression of the evidence against Davis to the extent where there is any reasonable probability that the verdict would have changed. This issue is without merit.

### 5) Counsel failed to object to the admission of testimony regarding decomposition of the victim's body even though it incited bias and passion in the jury.

¶19. Dr. Stephen Hayne testified that upon beginning his autopsy on the body of Linda Hillman, he noted that the body was in the early stages of decomposition and there was a slight green discoloration to the face. Dr. Hayne gave his opinion that due to the summer temperatures present at the time of Hillman's death, and the fact that she was found in a trailer without air conditioning, "one could see this level of

decomposition as early as eight hours." Shaddock did not object to this testimony, and now Davis alleges that Shaddock was ineffective for failure to do so, alleging that this testimony incited bias and passion in the jury. Davis cites *Welch v. State*, 566 So.2d 680, 685 (Miss. 1990), where this Court found reversible error on another issue, and in addition found that certain autopsy photographs which had been introduced were so gruesome and lacking in probative value as to be "overly prejudicial and inflammatory." The State argues that Dr. Hayne's testimony was relevant and not objectionable. The testimony was limited and clinical in nature and was relevant to the issue of time of death. As such we find that Shaddock did not perform deficiently, nor was he ineffective for failure to object to this limited testimony.

**6) Counsel's defense of Davis in the sentencing phase was deficient as a matter of law-Counsel failed to investigate the existence of character witnesses and inadequately prepared and examined the ones present.**

¶20. Davis next argues that Shaddock was ineffective in the sentencing phase for failure to investigate and locate additional character witnesses, and failure to better prepare the witnesses he did call. Shaddock's theory in this case appeared to be (1) attack the sufficiency of the evidence, particularly the State's failure to place into evidence what appeared to be drugs found at the victim's trailer, and suggest that a third person was involved; and (2) portray Davis as a non-violent person who was under the influence of drugs at the time in question. To this end Shaddock called one witness during the guilt phase of the trial, Christine Davis, Jeffrey's mother, who testified that she knew Linda Hillman; that Hillman and Davis were friends; and that Davis helped Hillman and her boyfriend, Kenny Dearman, care for Dearman's dogs. As to sentencing, Shaddock called Clayton Evans, who had known Davis when he was growing up as Davis and his family had lived in Evans's trailer park. Evans stated that when he knew Davis, he was "real accommodating to everybody, real nice to everybody," and was non-violent. Evans stated that he had little contact with Davis since the family had moved, which had been at least five years. Shaddock called Cynthia Lambert, Davis's sister, who briefly provided some of their family background, and specifically Jeffrey's. According to Lambert, Davis had completed high school through the eleventh grade, had joined the U.S. Army, had married during that time, had fathered two daughters who were approximately ten or eleven years old, and had divorced. She said Davis now did construction work, and she had never known him to be a violent person. Kevin Fortenberry testified that Davis had no prior felony convictions. Christine Davis then took the stand again and testified briefly as to their family history, stating that Jeffrey was not a violent person. She closed her testimony by begging for mercy for Jeffrey. The entirety of testimony presented by Shaddock in sentencing takes up approximately fifteen pages of this record.

¶21. Davis cites his affidavit which states that Shaddock did not find available character witnesses and did not prepare the few he called. Christine Davis states that Shaddock only met with her once for an hour and did not properly prepare her for testimony. She states that she would have told the jury that Jeffrey "became hooked on drugs at an early age and had along [sic] and continuous problem with addiction." Davis also attaches six affidavits from employers, neighbors and friends. All state that Davis is a talented person as far as mechanical repairs and a non-violent person. All state that Davis's attorney never contacted them but they would have testified if contacted, except for Maxine Graham's affidavit, which is not signed, and Russell Prentiss, who declined to say that he felt his affidavit would have made a difference. Maxine Graham is alleged to have died before she could sign. The most facially impressive affidavit is that of Eugene Howell, Sheriff of George County at the time of the trial. Davis was an inmate at Howell's jail during the trial, and Howell made Davis a trusty. Howell stated that he had known Davis and Davis's family most of his life, and he would have testified for Davis as a character witness if called.

¶22. Davis cites numerous cases from this Court, including *Woodward v. State*, 635 So.2d 805 (Miss. 1993); *State v. Tokman*, 564 So.2d 1339 (Miss. 1990); *Yarbrough v. State*, 529 So.2d 659 (Miss. 1988); *Leatherwood v. State*, 473 So.2d 964 (Miss. 1985); and *Neal v. State*, 525 So.2d 1279 (Miss. 1987). A common theme running throughout these cases is that while attorneys will be granted wide discretion as to trial strategy, choosing defenses and calling witnesses, a certain amount of investigation and preparation is required. Failure to call a witness may be excused based on the belief that the testimony will not be helpful; such a belief in turn must be based on a genuine effort to locate or evaluate the witness, and not on a mistaken legal notion or plain inaction. In *Leatherwood*, 473 So.2d at 970, Leatherwood provided this Court on post-conviction "with affidavits from many apparently willing and accessible witnesses who could have testified." Leatherwood also alleged a failure by counsel to interview the four witnesses that did testify. This Court found:

> In view of the importance of mitigating evidence in the sentencing phase it is difficult to understand why favorable, willing witnesses who could be discovered by questioning the defendant would not be called. If it were within the financial ability of the defendant to arrange for the appearance of a representative group of them, this would have a strong bearing on whether trial counsel provided effective assistance. Of course, counsel's overall performance must be considered.

*Leatherwood*, 473 So.2d at 970. Because of this and other alleged failures, Leatherwood was granted leave by this Court to proceed with his post-conviction motion in the trial court.

¶23. The State cites several federal cases for the proposition that counsel is not required to offer redundant witnesses and that Davis must show a reasonable probability that the omitted mitigating evidence would changed the jury's verdict. *See, e.g., Celestine v. Blackburn*, 750 F.2d 353, 356-57 (5th Cir. (La.) 1984); *see also Leatherwood*, 473 So.2d at 969-70 (valid reasons for not calling character witnesses include testimony may be primarily harmful; testimony may be impeached; testimony may be cumulative; witness may be uncooperative; and witness may be unavailable because of distance or finances).

¶24. The State points out that character witnesses who appear beneficial in an affidavit may turn out to be less than helpful on the witness stand, as Clayton Evans's credibility was damaged when he stated on cross-examination that he had little or no contact with Davis for over five years. The State also points out that one affiant, Russell Prentiss, altered his affidavit, refusing to state that he believed that his testimony would have made a difference. Another affiant, Maxine Graham, failed to sign hers, apparently because she died before she could do so. A review of the record shows that while Christine Davis stated in her affidavit that she would have testified as to Davis's longstanding drug problem had she been properly prepared, at trial she denied any knowledge of him using drugs. While the fact that Sheriff Howell was apparently willing to testify for Jeffrey Davis is impressive, a juror hearing his testimony might not be so impressed. Jeffrey's mother and sister may have testified about his life history in a cursory and non-productive manner because of lack of preparation, or because more detail would have been harmful to Jeffrey.

¶25. This issue offers a close question, and little can be known about Shaddock's preparation time and efforts in this case because of its procedural posture. We find that Davis should be granted leave to proceed on this issue in the circuit court under the authority of *Leatherwood*.

**7) Davis was not assigned two attorneys for his capital defense in violation of the Fifth and Sixth Amendments to the United States Constitution.**

¶26. Davis argues that he received ineffective assistance of counsel because he was entitled to be represented by two attorneys, but only one, George Shaddock, was appointed. Shaddock never asked the trial court for additional help, but now states in his affidavit that having additional counsel "would have benefitted counsel in the investigation, preparation and presentation at trial" of Davis's defense.

¶27. Miss. Code Ann. § 99-15-17 (1994) provides:

> The compensation for counsel for indigents appointed as provided in section 99-15-15, shall be approved and allowed by the appropriate judge and in any one (1) case may not exceed one thousand dollars ($1000.00) for representation in circuit court whether on appeal or originating in said court. Provided, however, if said case is not appealed to or does not originate in a court of record, the maximum compensation shall not exceed two hundred dollars ($200.00) for any one (1) case, the amount of such compensation to be approved by a judge of the chancery court, county court or circuit court in the county where the case arises. *Provided, however, in a capital case two (2) attorneys may be appointed, and the compensation may not exceed two thousand dollars ($2,000.00) per case.* If the case is appealed to the state supreme court by counsel appointed by the judge, the allowable fee for services on appeal shall not exceed one thousand dollars ($1000.00) per case. In addition, the judge shall allow reimbursement of actual expenses. The attorney or attorneys so appointed shall itemize the time spent in defending said indigents together with an itemized statement of expenses of such defense, and shall present same to the appropriate judge. The fees and expenses as allowed by the appropriate judge shall be paid by the county treasurer out of the general fund of the county in which the prosecution was commenced.

(emphasis added). In **Smith v. State**, 445 So.2d 227 (Miss. 1984), Smith raised on appeal the argument that § 99-15-17 required the circuit court to appoint two attorneys for his representation and failure to do so amounted to reversible error. This Court disagreed, stating: "However, the section provides that in a capital case, two attorneys *may* be appointed to represent an indigent defendant. It does not mandate that two attorneys be appointed. The constitution sets forth no such requirements for the appointment of attorneys for indigents. **Bell v. Watkins**, 692 F.2d 999, 1009 (5th Cir. (Miss.) 1982)." **Smith**, 445 So.2d at 230 (emphasis in original); *see also* **Marks v. State**, 532 So.2d 976, 979 (Miss. 1988)(same).

¶28. The State argues that the issue is more a substantive issue which should have been raised on direct appeal, but also fails as couched as ineffective assistance of counsel. We agree that without a more specific allegation of prejudice from Davis or Shaddock, the issue is without merit.

## 8) Counsel failed to request a change of venue.

¶29. Davis argues that Shaddock was ineffective for failure to request a change of venue due to numerous newspaper articles concerning Linda Hillman's murder and the District Attorney's intention to obtain his first capital murder conviction. Davis presents no such articles and does not allege that the District Attorney violated any of the Rules of Professional Conduct or a court order. The State answers that Davis's allegations are too vague to answer or to serve as the basis for any relief. This issue is without merit.

## 9) Counsel failed to move to quash the jury based on improper contact with the State.

### A) Jury members were taken on a tour of the Greene County Jail where Davis was held the week before trial and discussed Davis's case with guards.

**B) Jury members mingled with Assistant District Attorney Daryl Dryden the week prior to trial.**

¶30. This issue is considered in conjunction with Issue I(13). Davis alleges that Shaddock should have moved to quash the jury based on improper contact between prospective jurors and the District Attorney's Office and the guards at the county jail. Davis argues first that his cellmate in the county jail was one Doug Keel. Davis further alleges that Keel's wife witnessed the jury pool which was used for Davis's trial take a tour of the county jail the week before. According to Davis's brief, Mrs. Keel saw potential jurors discuss Davis's case with a dispatcher at the jail. Davis further alleges that he notified Shaddock as to this allegation. Apparently Shaddock never attempted to make a record on this allegation during voir dire. There is no affidavit from either of the Keels supporting this allegation. Davis admits that he has been unable to locate the Keels since the trial. There is an affidavit from one Belinda Davis, who states that she spoke with Mrs. Keel and Mrs. Keel told her the same story.

¶31. Davis also alleges in his affidavit that he saw an assistant district attorney "talking and smoking with some people. Two of these people, both young men, ended up as jurors on my case. I told my attorney about all of this and thought he notified the Court of the problem by requesting a special venire." It does appear that Shaddock made an attempt to bring this to the trial court's attention once he discovered a special venire had not been drawn. The trial court denied the motion for special venire, and Shaddock failed to make a record on this issue.

¶32. Both actions, if they occured, would have amounted to a violation of then Uniform Criminal Rule 8.01. The alleged violations must then be viewed in conjunction with the failure of trial counsel to request a special venire, discussed under I(13). We find that Davis should be granted leave to proceed in the trial court on this issue.

**10) Counsel failed to investigate or offer any independent evidence of cocaine psychosis.**

¶33. Davis next alleges that Shaddock attempted to show that Davis was a drug user, specifically cocaine, to the extent that he could not form the intent required to commit murder, and to the extent that his drug use resulted in impairment so severe that it should be considered as a mitigating circumstance in his sentencing. Davis continually uses the term "cocaine psychosis" as what Shaddock was trying to show, or should have been trying to show.

¶34. Specifically, Davis alleges that Shaddock was ineffective in his failure to employ an expert witness, failure to attempt to have the court appoint and fund such a witness, and failure to offer any lay witness who would have testified to his drug problems. Davis relies on his affidavit, which states that he "got addicted to cocaine real bad" the month before Linda Hillman's death. Davis also alleges that he was drinking a six pack of beer a day for the last year or two before Hillman's death, and was taking Valium, Xanax, and smoking marijuana. Christine Davis stated in her affidavit that Jeffrey "became hooked on drugs at an early age and had along [sic] and continuous problem with addiction . . . ." Davis also alleges that Sam Howell, the toxicology expert for the State, "admitted that Davis could have been suffering from cocaine psychosis." Actually, what Howell testified to was that he had no opinion on whether Davis suffered from any drug-induced psychosis and there was no way he could tell whether Davis had suffered from cocaine psychosis.

¶35. Davis relies on *Woodward v. State*, 635 So.2d 805 (Miss. 1993), where counsel was found to be ineffective for failure to present all the mitigating psychiatric evidence that was available due to counsel's

(mis)understanding that introduction of this evidence would open the door to the State to introduce unlimited character evidence. Davis also cites *Loyd v. Smith*, 899 F.2d 1416 (5th Cir. (La.) 1990), where Loyd's counsel was found to be ineffective for failure to obtain an independent psychiatrist, where Loyd had actually been treated in a mental hospital and his hospital treatment records showed symptoms of diminished capacity and brain dysfunction.

¶36. In this case Davis is unable to present, even at this point in the proceeding, any affidavit from any kind of mental health expert stating that Davis was under some kind of drug-induced psychosis or state at the time of the crime. There is the possibility that Shaddock could not find any such expert because no such expert existed. There is also the possibility that such a defense would have been as harmful to Davis as beneficial. The fact that Davis was a drug user, perhaps even a heavy drug user, does not inevitably lead to the conclusion that Shaddock could or should have obtained an expert on the subject and used him to Davis's benefit at this trial, and that Shaddock was ineffective for failure to do so. This issue is without merit.

**11) Counsel failed to explain a plea bargain offered to Davis.**

¶37. One of the affidavits attached to Davis's Application for Leave to File Motion is from Dale Harkey, the District Attorney who prosecuted Davis. Harkey's affidavit states:

> Prior to the trial [of cause no. 3065] thereof, I tendered to the Defendant, Jeffrey K. Davis, a plea offer whereby in exchange for a plea of guilty to Murder and Armed Robbery, the State of Mississippi would recommend a sentence of Life imprisonment for Murder, and ten (10) or (20) years imprisonment, consecutive, for Armed Robbery. This offer was not reduced to writing, but communicated to the attorney of record for Jeffrey K. Davis.

¶38. Two affidavits of George Shaddock are attached. In Affidavit K Shaddock states: "In that case [cause no. 3065], Jeffrey K. Davis was not offered a plea bargain by the State of Mississippi prior to his conviction." The only way these two affidavits can be reconciled is if Davis had some other attorney of record at some time in this case besides Shaddock, or if Harkey imparted something to Shaddock which Harkey felt was a plea offer and which Shaddock felt was not.

¶39. To confuse matters further, Jeffrey Davis offers the following in his affidavit:

> I believe I was offered a plea bargain of two twenty year terms before trial, but my attorney never explained any details good enough for me to fully consider it. I would have taken this plea bargain if it had been fully explained to me. I would also have considered any other plea bargains offered by the State if they were fully explained to me. Mr. Shaddock never took any appreciable time to discuss anything about plea bargains with me.

¶40. An attorney who is offered a plea agreement in a capital murder case, and does not convey that offer to his client, the defendant, so as to allow the defendant to consider the agreement in making his decision to face trial, meets the requirements of deficient conduct and prejudice within the meaning of *Strickland v. Washington* where the defendant is convicted and sentenced to death. *See Nelson v. State*, 626 So.2d 121, 127 (Miss. 1993). We are not saying that, based on these affidavits, George Shaddock was ineffective. The affidavits engender more confusion than anything else, but Davis is entitled to an evidentiary hearing in the trial court on this issue of whether there was a plea agreement conveyed to any counsel of record for Davis, and if so, whether the offer was in turn conveyed by counsel to Davis.

**12) Counsel failed to object to Instruction S-3 which was defective in violation of state law and the Eighth Amendment.**

¶41. Davis next argues that Shaddock was ineffective for failure to object to Sentencing Instruction S-3 on the basis that a signature line appeared only under the death option and made the life option appear secondary.

¶42. When this Court considered this issue on direct appeal, it found that defense counsel had objected to S-3 on numerous grounds, but not on this ground, therefore, the issue was first procedurally barred. *See Davis*, 684 So.2d at 664. As to the merits, this Court cited *Jenkins v. State*, 607 So.2d 1171 (Miss. 1992), where the same kind of deficiency was alleged, but in *Jenkins* the death option, along with the foreman's signature line was on the next to last page, while the life options, without signature line, were on the last page of the instruction. Since that was not the case in Davis's case (all three options appeared on the same page), this Court distinguished this case from *Jenkins* and found the issue without merit. As we found on direct appeal that the issue of missing signature lines was without merit, we further find that Shaddock was not ineffective for failure to object on this basis.

**13) Counsel failed to request a special jury venire prior to trial date.**

¶43. As stated earlier, this issue should be viewed in conjunction with Issue I(9). Davis argues that Shaddock was ineffective for failure to request a special venire to which he was entitled under Miss. Code Ann. § 13-5-77 (Supp. 1998). In this case the State had moved for a special venire but withdrew the request before trial. Shaddock did not file such a motion, claiming that he had relied on the State's motion, and only made such a request at trial when he realized that a special venire had not been drawn. The venire in this case was impaneled a week prior to trial and was recalled to serve for the Davis trial. The circuit clerk stated that none of the venire in question had actually served on any case the prior week. On direct appeal this Court found that the issue was without merit because of the untimely request of Shaddock. *Davis*, 684 So.2d at 650.

¶44. The State answers that Davis cannot simply recast issues held to be without merit on direct appeal as ineffective assistance of counsel on the post-conviction level, citing *Foster v. State*, 687 So.2d 1124, 1129 (Miss. 1996). We would agree except in a rare case such as this one, where the issue was held without merit solely because of the actions of counsel. This Court has held that failure to request a special venire may be a factor worthy of consideration in a successful ineffective assistance of counsel claim. *See Triplett v. State*, 666 So.2d 1356, 1361-62 (Miss. 1995). We stated on direct appeal stated that there was "no attempt on the part of Davis to suggest that he was prejudiced as a result of the circumstances." *Davis*, 684 So.2d at 650. Here Davis states under Issue I(9) that certain unknown members of his jury were in contact with the Assistant District Attorney at some unknown time prior to trial. If proven these allegations could amount to prejudice sufficient to amount to ineffective assistance of counsel under *Strickland v. Washington*. This Court finds that Davis should be granted leave to proceed in the trial court on Issues I(9) and I(13).

**14) Counsel failed to have to have the court reporter record the jury selection process.**

¶45. Davis next argues that Shaddock was ineffective for failure to have the court reporter fully record the jury selection process. Davis states that "because such an error would have required the reversal of his sentence and a new trial, counsel was ineffective." However, this Court considered this allegation on direct

appeal and found that there was no reversible error because Davis "failed to show or attempt to show that he was prejudiced as a result, in that the loss of information would have revealed a violation of Davis's rights during jury selection." *Davis*, 684 So.2d at 651. Davis makes no further allegation here of what issues defense counsel would or should have raised had the entirety of the jury selection process been preserved. This issue is without merit.

## 15) Counsel failed to object to the nonconformity between S-3, S-2 and the indictment.

¶46. Davis was indicted for murder while engaged in the commission of robbery. Instruction S-2 also charged that Davis had committed robbery. Instruction S-3 instructed the jury that Davis's actions could constitute armed robbery. Davis alleges that Shaddock was ineffective for failure to object to this variance. This issue was raised on direct appeal and rejected by this Court, first because defense counsel did not object, and then on the merits. *See Davis*, 684 So.2d at 659-60. This Court found that any amendment to the indictment by these instructions was one of form and not substance, and that any error was harmless.

¶47. The State now argues that Davis has simply recast an error already considered and rejected on the merits as ineffective assistance of counsel. We agree and find the issue to be without merit.

## 16) Counsel failed to raise the M'Naghten Rule in contesting the State's voluntary intoxication instruction.

¶48. The State requested and was granted Instruction S-4, which instructed the jury that voluntary intoxication was not a defense in this case if Davis was capable of distinguishing between right and wrong when sober. On direct appeal Davis alleged that this instruction had improperly relieved the State of its burden on the question of intent. This Court found that S-4 was proper and the burden of proof remained with the State under consideration of all the instructions. *Davis*, 684 So.2d at 652-53.

¶49. It appears that Davis now alleges that Shaddock was ineffective for failure to object to S-4 due to the allegation that Davis was temporarily insane due to his intoxication at the time of the murder. The State argues that this is simply the same issue raised on direct appeal and recast as ineffective assistance of counsel.

¶50. Davis first cites *Edwards v. State*, 178 Miss. 696, 174 So. 57 (1937), where this Court found that drunkenness could be a defense to a crime requiring proof of specific intent. This proposition was repeated in *Bieller v. State*, 275 So.2d 97 (Miss. 1973), where this Court found that voluntary intoxication could reduce murder to manslaughter because of lack of specific intent. However, it was determined in *Lanier v. State*, 533 So.2d 473, 478 (Miss. 1988), and was repeated on direct appeal in *Davis*, that "voluntary intoxication is not a defense to a specific intent crime." The combination of voluntary intoxication and insanity was considered in *Norris v. State*, 490 So.2d 839 (Miss. 1986), which we also cited on direct appeal in *Davis*. In *Norris* this Court found that an instruction similar to S-4 was appropriate because of evidence of Norris's voluntary intoxication. Norris, however, argued that he had raised insanity in the form of post-traumatic stress syndrome, and not intoxication, as a defense. The trial court also allowed an insanity instruction, and this Court found that each was appropriate if supported by the evidence, and the voluntary intoxication instruction did not cause the jury to disregard Norris's insanity defense. *Norris*, 490 So.2d at 841-42.

¶51. Under *Norris*, evidence of insanity, or the *M'Naghten* defense, is not a basis for refusing to give an

instruction like S-4; it is a basis for giving a separate instruction on insanity. In this case Davis never raised the insanity defense. Davis argues that Sam Howell, the State's expert on toxicology who detected cocaine in Davis's urine sample, could not state conclusively whether Davis was operating under delusional activity caused by cocaine psychosis. This is true. Howell was also never asked if Davis was *M'Naghten* insane at the time of the murder. We find that George Shaddock was not ineffective for failure to object to Instruction S-4 based on alleged insanity due to alleged drug intoxication.

## 17) Counsel failed to pose a specific objection to pain testimony by Dr. Hayne.

¶52. Dr. Stephen Hayne, a forensic pathologist, testified as to whether certain of Linda Hillman's wounds would have been painful and/or lethal. Defense counsel objected to the first such question, but did not give a specific ground, and then objected to some but not all of the ensuing questions of this nature, apparently on the ground that Dr. Hayne lacked personal knowledge to answer such a question. The objections were overruled. The issue was not raised on direct appeal.

¶53. Davis now alleges that Shaddock was ineffective for failure to raise a specific objection, either on the ground of lack of personal knowledge or that Dr. Hayne's expertise as a forensic pathologist did not include testimony on pain. Davis cites *Jones v. State*, 678 So.2d 707 (Miss. 1996), where this Court found that a social worker's opinion as to how a child could have ingested cocaine was improper due to lack of expertise or personal knowledge. In response the State cites *Holland v. State*, 705 So.2d 307, 341 (Miss. 1997), where this Court stated: "Discussion of pain by a forensic pathologist is admissible. Our caselaw has allowed forensic evidence to prove that a victim suffered a fatal heart attack as a result of trauma and stress induced by a beating and robbery." This issue is without merit.

## 18) Counsel failed to require the prosecution to lay the proper foundation for introduction of the highly prejudicial photograph of Davis's right arm.

¶54. The State introduced a photograph of Davis's arm through Kevin Fortenberry, an investigator for the Mississippi Highway Patrol, who had taken the photograph. Shaddock objected to admission of the photograph, stating: "He don't know when that was done, or how it was done, or by whom it was done, or what object did it." These comments apparently referred to a scratch mark on Davis's arm. On direct appeal this Court rejected the allegation that the photograph was inadmissible because it was irrelevant. *See Davis*, 684 So.2d at 659.

¶55. Davis now argues that Shaddock was ineffective for failure to object to the photograph based on the State's failure to offer a proper predicate for the photograph, in other words, having Fortenberry testify that it fairly and accurately depicted Davis and his arm at the time it was taken, citing *Wactor v. John H. Moon & Sons, Inc.*, 516 So.2d 1364, 1367 (Miss. 1987). Davis argues that had Shaddock objected on the ground of lack of predicate, the photograph would have been excluded. Had that objection been made, it is more likely that the trial judge would have at most required the State to ask the question at issue, at which time Fortenberry would have made the required answer. We find that Shaddock was not ineffective for failure to require the State to ask this one additional question.

## 19) The cumulative errors of counsel deprived Davis of his Sixth Amendment right to the effective assistance of counsel.

¶56. We find that the cumulative error argument is without merit. As stated, Davis is granted leave to

proceed in the trial court on Issues I(6), (9), (11) and (13).

## II. Juror Denmark worked with Davis's mother but failed to reveal this fact during voir dire.

¶57. Jeffrey Keller Davis argues next that Terri Denmark, who served on his jury, failed to answer a question during voir dire which would have caused her to be stricken for cause, resulting in reversible error. District Attorney Harkey asked at the beginning of his voir dire: "Now, does anybody know Mr. Davis, the defendant in this particular case? Anybody know him? Does anybody know Mr. Davis' family. I believe some family members may be seated out in the audience." Davis's mother, Christine Davis, was employed as a nurse at the South Mississippi Correctional Facility in Greene County. Christine Davis stated in her affidavit attached to Davis's Application that Terri Denmark "worked with me at the prison as a security officer but did not reveal knowing me." The affidavit states nothing about the nature of the working relationship or the frequency of contact between the two. Davis argues that if he had known about the relationship then "she [Denmark] would have been struck from the jury for cause."

¶58. Miss. Code Ann. § 99-39-21 (1994) states in part:

> (1) Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

> (2) The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue; and any relief sought under this chapter upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice.

> (3) The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal.

¶59. Davis cites numerous cases from this Court where the relationship between the juror and the person in question, justifying striking the juror, was much closer than that of co-worker. *See **Taylor v. State***, 656 So.2d 104 (Miss. 1995)(juror was brother of assistant district attorney); ***Atkinson v. State***, 371 So.2d 869 (Miss. 1979)(juror had relative who was killed in similar manner to crime victim); ***Walls v. State***, 371 So.2d 411 (Miss. 1979)(juror's son was murder victim); ***Odom v. State***, 355 So.2d 1381 (Miss. 1978) (juror was brother of police investigator in the case in question). Because few of the details of the alleged relationship are provided, it is speculative as to whether a challenge for cause would have been justified. The State argues that, as this issue could have been raised on direct appeal and was not, it is waived and procedurally barred under § 99-39-21(1). The State further argues that the issue is speculative and Davis failed to show any prejudice merely because Denmark served as a juror. We agree that this issue is procedurally barred and without merit.

## III. The prosecution improperly elicited evidence regarding Davis's alleged lack of remorse at trial.

¶60. Davis next argues that the prosecution improperly produced testimony concerning Davis's lack of

remorse after the murder. Davis argues that this was improper first because lack of remorse is not one of the eight statutory aggravating factors, and second, because it amounted to a comment on Davis's refusal to testify. This issue was raised and rejected by this Court on direct appeal. *See Davis*, 684 So.2d at 653-54. This issue is barred by res judicata.

### IV. The many instances of prosecutorial misconduct violated Jeffrey Davis's right to a fair trial.

¶61. Davis next alleges four specific instances of prosecutorial misconduct or error. The four instances involve (1) the State's closing sentencing argument where the State argued that Davis was protected by rights that he had not allowed Linda Hillman to enjoy; (2) the State's rebuttal of Davis's lack of criminal history by arguing drug use was equivalent to criminal activity; (3) the State's impugning the ethics of defense counsel; and (4) the State attempting to recreate Hillman's dying thoughts in closing argument. This issue was raised and rejected by this Court on direct appeal. *See Davis*, 684 So.2d at 654-56. The State answers that as this issue was raised and rejected on direct appeal, it is barred by res judicata from being considered at the post-conviction level under § 99-39-21(3). We agree with the State that this issue is barred by res judicata.

### V. The trial court erred in denying defendant's instruction on the lesser included offense of murder.

¶62. Davis next alleges that the trial court erred in failing to give Instruction D-7, which would have allowed the jury to consider the lesser-included offense of murder. This issue was raised and rejected by this Court on direct appeal. *See Davis*, 684 So.2d at 656-57. We find that the issue is barred by res judicata from being considered at the post-conviction level under § 99-39-21(3).

### VI. The trial court erred in limiting examination of witness Clayton Evans with regard to his knowledge of the victim.

¶63. Davis next alleges that the trial court erred in refusing to allow Clayton Evans to testify as to the details of his relationship with the victim Linda Hillman, specifically as to bail bonds he wrote for her and the criminal offenses with which she may have been charged. This issue was raised and rejected by this Court on direct appeal. *See Davis*, 684 So.2d at 660-61. The issue is barred by res judicata.

### VII. The trial court erred in prohibiting evidence concerning the victim's prior conviction for possession of marijuana.

¶64. Davis next alleges that the trial court erred in excluding evidence of Linda Hillman's non-adjudicated offense for possession of marijuana. This issue was raised and rejected by this Court on direct appeal. *See Davis*, 684 So.2d at 660-61. The issue is barred by res judicata.

### VIII. The aggravating circumstance of whether the capital offense was committed for pecuniary gain was invalid and should not have been submitted to the jury.

¶65. Davis next alleges that the trial court erred in submitting Sentencing Instruction S-2 to the jury. Davis argues that the instruction should not have been given for two reasons: (1) S-2, when considered with the closing argument of the State, amounted to "stacking" the pecuniary gain factor with the robbery factor as separate aggravating circumstances; and (2) because the trial judge failed to define "pecuniary gain," the instruction was too vague. Davis further argues that this Court did not address this issue in its entirety in its

opinion. This Court defined "stacking" as submitting robbery and pecuniary gain to the jury as separate aggravating circumstances. *Davis*, 684 So.2d at 663. The Court defined "doubling" as referring "to situations where a crime such as robbery is used both as the underlying felony to support a capital murder charge and as an aggravating circumstance to support the imposition of a death sentence." *Davis*, 684 So.2d at 663. This issue was raised and rejected on direct appeal and is barred by res judicata from being considered at the post-conviction level under § 99-39-21(3).

### IX. The jury should not have been instructed to consider the heinous, atrocious or cruel aggravating circumstance under the facts in this case.

¶66. Davis next alleges that the trial court erred in allowing the jury to consider the "especially heinous, atrocious or cruel" aggravator, stating that the evidence did not support it. This issue was raised and rejected by this Court on direct appeal. *See Davis*, 684 So.2d at 662-63. The issue is barred by res judicata.

### X. The jury was given an unconstitutional definition of the heinous, atrocious or cruel aggravating circumstance in the sentencing phase of trial.

¶67. Davis next alleges that the trial court erred in giving the "especially heinous, atrocious or cruel" aggravator in the form in which it was given, stating that too many of the factual scenarios contained in this instruction did not apply to Davis and the instruction was therefore overly specific, overly broad and all-encompassing. This issue was raised and rejected by this Court on direct appeal. *See Davis*, 684 So.2d at 661-62. It is barred by res judicata from being considered at the post-conviction level under § 99-39-21(3).

### XI. The sentencing instructions were erroneous in that they failed to inform the jury that they need not be unanimous in finding mitigating circumstances.

¶68. Davis next alleges that Sentencing Instruction S-2, which instructed the jury that aggravating circumstances must be found unanimously, did not instruct the jury that unanimity was not required for mitigating circumstances. This issue was raised and rejected by this Court on direct appeal. *See Davis*, 684 So.2d at 664-65. This issue is barred by res judicata from being considered at the post-conviction level under § 99-39-21(3).

### XII. The trial court erred in allowing the district attorney to ask prospective jurors about their ability to return a death sentence given specific facts.

¶69. Davis next alleges that the trial court erred in allowing the prosecutor to ask jurors whether they could consider the death penalty given the particular circumstances involved in this case. This issue was raised and rejected by this Court on direct appeal. *See Davis*, 684 So.2d at 651-52. It is barred by res judicata.

### XIII. The use of the trial judge questionnaire and Miss. Code Ann. § 99-19-105 violated the Fifth, Sixth and Fourteenth Amendments [of] the United States Constitution.

¶70. Davis next alleges that the Report of the Trial Judge Where Death Penalty Imposed, which was completed by Circuit Court Judge William Jones and filed with this Court on June 30, 1993, pursuant to Miss. Code Ann. § 99-19-105(1)(1994), violated his right to due process. Davis alleges that the report should not be considered because it allows this Court to consider facts not entered into evidence and

because it seeks the gratuitous opinions of the trial judge. According to a cover letter, the report was forwarded to the parties by Judge Jones so that the parties could submit comments on the report's factual accuracy, but defense counsel Shaddock denies that he was ever "given the opportunity by anyone to review the trial judge questionnaire." Judge Jones stated that he received no comments before he submitted the report to this Court. Davis filed a Motion to Strike Trial Judge's Responses to Death Penalty questionnaire and for Other Relief on January 17, 1995. The motion asked that the Questionnaire be struck for the same reasons raised here. The Court denied the Motion to Strike by order dated June 20, 1996. As this issue was raised and rejected on direct appeal, it is barred by res judicata from being considered at the post-conviction level under § 99-39-21(3).

### XIV. The Court's proportionality review was based on erroneous evidence.

¶71. Davis next alleges that the Report of the Trial Judge Where Death Penalty Imposed contains erroneous information, such as Davis's claim that he had been married and divorced, that he had two daughters from the marriage, and his father was alive. Cynthia Lambert, Davis's sister, testified that Davis had been married and divorced and had two daughters, so that much information is included in the record. The accuracy of the information in the Report was not raised on direct appeal, and the State argues that this issue is waived and procedurally barred under Miss. Code Ann. § 99-39-21(1). We agree that the issue is procedurally barred.

### XV. The death sentence should be vacated as it is cruel and unusual punishment in violation of the Eighth Amendment and disproportionate given the circumstances of the crime and the background of the defendant.

¶72. Davis next alleges that the death penalty was disproportionate given the circumstances of this case. Davis also raises once again the issue of the inaccurate Report of the Trial Judge Where Death Penalty Imposed. This issue was raised, minus the allegations concerning the Report, and rejected by this Court on direct appeal. *See **Davis**, 684 So.2d at 651-52.* The State answers that as this issue was raised and rejected on direct appeal, it is barred by res judicata from being considered at the post-conviction level under § 99-39-21(3). The issue is barred under § 99-39-21(1) and 99-39-21(3).

### XVI. The cumulation of error in this case demands reversal.

¶73. After due consideration of Davis's argument, we find that this issue is without merit.

### CONCLUSION

¶74. Jeffrey Keller Davis's Application for Leave to File Motion to Vacate Judgment and/or Sentence of Death is granted in that he is allowed to proceed on the following issues in the Greene County Circuit Court, all under the allegation of ineffective assistance of counsel: I(6), investigation and preparation of character witnesses; I(9), improper contact between the State and prospective jurors; I(11), failure to convey or explain a plea agreement; and I(13), failure to request a special jury venire. The case is remanded to the Greene County Circuit Court for further proceedings consistent with this opinion. In all other respects, the application is denied.

¶75. Davis has also filed with this Court a Motion for Appointment of Counsel, Payment of Reasonable Litigation Expenses and Suspension of Briefing. The Motion asks for relief similar to that granted by this Court in ***Henry Curtis Jackson, Jr. v. State**, No. 98-DR-00708-SCT, 1999 WL 33904 (Miss. Jan. 28,*

1999). The Greene County Circuit Court is also directed to appoint counsel for Davis and for consideration of reasonable litigation expenses. While three attorneys filed Davis's Application for Leave to File Motion to Vacate Judgment and/or Sentence of Death in this Court, there is nothing which mandates that any or all of these attorneys be appointed to represent Davis on the issues for which he has been granted leave to proceed in the Greene County Circuit Court, or any ensuing litigation; this is a decision for the Circuit Court under the particular facts and circumstances of this case. Any such appointment should be made with recognition of the experience and qualification necessary for competent representation and in recognition of the level of competency which is compatible with federal habeas corpus review.

¶76. **APPLICATION FOR LEAVE TO FILE MOTION TO VACATE JUDGMENT AND/OR SENTENCE OF DEATH GRANTED IN PART AND DENIED IN PART, AND CASE REMANDED TO THE GREENE COUNTY CIRCUIT COURT FOR FURTHER PROCEEDINGS.**

**MOTION FOR APPOINTMENT OF COUNSEL, PAYMENT OF REASONABLE LITIGATION EXPENSES AND SUSPENSION OF BRIEFING GRANTED, AND CASE REMANDED TO THE GREENE COUNTY CIRCUIT COURT FOR APPOINTMENT OF COUNSEL FOR JEFFREY KELLER DAVIS AND CONSIDERATION OF REASONABLE LITIGATION EXPENSES.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, McRAE, MILLS, AND WALLER, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COBB, J.**

**SMITH, JUSTICE, DISSENTING:**

¶77. Under the *Strickland v. Washington* standard, prejudice of a defense requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984).

¶78. In the case of evidence that is not introduced, the omitted evidence must be likely to alter the outcome of the decision. In *Cole v. State*, 666 So.2d 767, 776-77 (Miss. 1995) this Court followed the standard set out in *Celestine v. Blackburn*, 750 F.2d 353, 356-57 (5th Cir. 1984) (*following Willie v. Maggio*, 737 F.2d 1372, 1394 (5th Cir. 1984) (defendant's argument that additional witnesses should have been included to testify regarding the defendant's "troubled adolescence" was rejected). The *Celestine* court held that in a sentencing hearing defense counsel's failure to present certain additional evidence was not prejudicial when the evidence was available from other sources and therefore a change in outcome was unlikely. Therefore, under *Celestine*, similar evidence which is obtained from similar sources (like additional character witnesses) is not a necessary part of the defense.

¶79. Such is the case here. The facts of the case at bar were so overwhelming that no jury would have failed to return the death sentence even had these additional witnesses now suggested by Davis been called by trial counsel. Thus, had the witnesses been called to testify, there is not a reasonable probability that the

result would have been different. In *Leatherwood v. State*, 473 So.2d 964, 969 (Miss. 1985), this Court outlined several valid reasons for not calling character witnesses including such testimony may be primarily harmful, impeached, cumulative, etc.

¶80. The facts here suggest that any additional character witnesses would have been cumulative and inconsistent with the overall trial defense. Defense counsel offered the testimony of four character witnesses during sentencing. Three of them claimed to know Davis as a non-violent person and a hard worker. All of the additional character witnesses that Davis claims should have been included also affirm his status as a talented mechanic and a hard worker. While each of these witnesses might have been willing and available to testify, none of them brought unique information to be considered about Davis's behavior. The additional testimony would merely echo that which was already offered at mitigation, and redundancy is not necessarily a desirable trait in Davis' character witnesses, especially when there is potential for them to be undermined, as was the case with Clayton Evans, Davis's former landlord, who stated that he had no contact with Davis during the last five years. Another affiant, Russell Prentiss, even altered his affidavit refusing to state that his testimony would have made a difference.

¶81. The majority also fails to defer to defense counsel's strategy regarding sentencing hearings, as is demanded in *Strickland*; judicial assessment must be "highly deferential" and "indulge a strong presumption. . . of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Counsel could legitimately have determined that additional testimony to Davis's hard-working and responsible nature might bolster his appearance as a non-violent person, but at the same time, shift attention away from the defense's focus on the importance of drug use in Davis's behavior. In *King v. State*, 503 So.2d 271, 274 (Miss. 1987), this Court upheld the trial counsel's failure to call any character witnesses as trial strategy. Here, trial counsel did call character witnesses in defense of Davis. He simply did not apparently call everyone who claimed to be willing to testify as to Davis' good character. Thus, it is a stretch to blame trial counsel for not calling cumulative witnesses.

¶82. Davis also asserts that his counsel failed to adequately explain a plea bargain offer to him. However, the evidence surrounding Davis's potential plea bargain is confused and conflicting. The District Attorney asserts that he communicated the offer to the defense attorney, the defense attorney claims no offer was ever communicated to him, and the defendant claims that his attorney did not sufficiently explain the details of a plea bargain of two twenty-year terms. Even assuming that Davis's memory of this offer is correct, those details of the offer that he knew were themselves sufficient to allow Davis to make an informed choice. If Davis did indeed receive a plea bargain offer through his attorney, Davis failed to elaborate in his affidavit and indicate what other details he would have needed to be able to "fully consider it." Regardless, Davis cites no legal authority under this argument and thus has not properly presented this issue on appeal; and therefore, it is procedurally barred. *Edwards v. State*, No. 97-DP-00566-SCT, 1999 WL 74757, *13 (Miss. Feb. 18, 1999); *Holloman v. State*, 656 So.2d 1134, 1141 (Miss. 1995).

¶83. The issues of improper contact between jurors and members of the court and jail staff rely heavily on the defendant's testimony and have little or no substantiating evidence to accompany them. The source of the allegation that jurors discussed Davis's case with the jail staff, the only person who could provide firsthand testimony to validate the claim, cannot be located. The testimony of the Keels, the first and secondhand sources of the information, is a necessary part of the evidence and cannot be obtained. At this point all Davis can offer regarding this claim is hearsay. Even Davis's second allegation, that he saw the Assistant District Attorney talking to jurors, depends entirely on his own affidavit with no additional

evidence. Specifically, there is no evidence that Davis made his counsel aware of this alleged interaction during voir dire, at which point counsel could have made a motion to strike those jurors. Therefore, Davis's allegations do not warrant an evidentiary hearing. *Cole*, 666 So.2d at 777 (an evidentiary hearing is not necessary where the allegations in a petition for post-conviction relief are specific and conclusory).

¶84. The majority also views jointly this claim of improper contact between jurors and members of the court and the claim of counsel's failure to request special venire. By allowing the special venire issue to be viewed in the context of the improper contact issue, the majority validates the improper contact claim. The part of the opinion addressing I(13), the failure to request special venire, relies on the alleged contact between jurors and the Assistant District Attorney to prove the prejudice necessary for the ineffective assistance of counsel claim; one potential issue is given the strength to influence and prove another potential issue. When the special venire issue is viewed by itself, it is controlled, as it should be, by the court's decision on the merits, as it was already decided on direct appeal. *See **Foster v. State**, 687 So.2d 1124, 1129 (Miss. 1996)*. The court has already examined the circumstances surrounding the State's filing a motion for special venire, counsel's reliance on that motion, the State's withdrawal of the motion, and counsel's subsequent motion to quash the venire, which brought the defendant's protest to the venire to the court's attention. ***Davis v. State***, 684 So.2d 643, 650 (Miss. 1996). There, this Court stated as follows:

> This Court will not overrule the lower court's denial of a motion for special venire except upon a showing of abuse of discretion. (citation omitted). Because there was no showing of abuse of discretion, we find that the assignment of error is without merit.

***Id.*** at 650. Viewing all of these circumstances in search of an abuse of discretion, this Court held that the appeal was without merit. Now Davis wishes to use the same issue recast as a failure of his counsel. However, *Foster* does not allow Davis to bring claims that fail on their own merits on direct appeal under a claim of ineffective assistance of counsel. 687 So.2d at 1129.

¶85. Accordingly, I respectfully dissent.

**COBB, J., JOINS THIS OPINION.**